IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF ALABAMA

Marian S.A. Tipp

    *Plaintiff,*

v

                              Civil Action No: 02-CV-2020-

                              20-cv-317-TFM-N

JPMC Specialty Mortgage, LLC,
JP Morgan Chase Bank, N.A.,
Chase Home Finance, LLC,
*Fictious parties John Does
and Jane Does,*

    *Defendants.*

## DECLARATORY JUDGMENT ACTION
## TO RECOVER POSSESSION OF PROPERTY

COMES NOW, the Plaintiff, Marian S.A. Tipp, *successor in title,* in this Declaratory Judgment Action to recover possession of the property known as "11101 Ben Hamilton Road, Grand Bay, Alabama." ("the Property" or "the home of Plaintiff's parents").

This action arises from an "unauthorized" foreclosure sale conducted by JPMC Specialty Mortgage LLC ("JPMC") on July 13, 2009. JPMC subsequently filed an ejectment complaint on July 24, 2009 styled as JPMC Specialty Mortgage, LLC fka WM Specialty Mortgage, LLC ("JPMC") v. Carolyn E. Sims ("Ms. Sims") Case No. CV-2009-901393 ("the 2009 case").

On August 22, 2009, Plaintiff's sister, Ms. Sims, executed a quit claim deed where she conveyed "all the right, title, interest and claim or demand" in the home of her parents that she had already lost in foreclosure.

Plaintiff can sum up the facts relevant to JPMC's claims of ownership of the

property through the ejectment proceedings against Ms. Sims, *predecessor in title* from start to finish in 2 paragraphs:

- on July 24, 2009, JPMC filed an ejectment action demanding possession of the property;
- on August 27, 2010, JPMC filed a Rule 41(a)(2) Motion to Dismiss, or in the alternative, Request for Permission to Secure the Property.

JPMC did not litigate it's claims against Ms. Sims and did not recover possession of the property through the Alabama court system.

## JURISDICTION

A federal district court has original jurisdiction or federal question over this case and also has diversity jurisdiction. A federal district court has original jurisdiction of an action between citizens of different states when the amount in controversy exceeds $75,000.00. 28 U.S.C. § 1332(a) Diversity jurisdiction exist.

JPMorgan Chase Bank, N.A., ("CHASE BANK"), is a federally chartered national bank with its home office and principal place of business outside the State of Alabama.

In *Rouse v. Wachovia Mortgage, FSB,* No. 12-55278, 2014 WL 1243869 (9th Cir. Mar. 27, 2014), the court held that a national bank is a citizen only of the state in which its main office is located.

## THE PARTIES

1.     Plaintiff is a resident of Mobile County, Alabama and is over the age of 21.

2.     JPMC Specialty Mortgage, LLC, ("JPMC"), a Delaware foreign limited liabity company, is not qualified to do business in Alabama and has no known principal place of business.

3.     JPMorgan Chase Bank, N.A., ("CHASE BANK"), is a federally chartered national bank with its home office and principal place of business outside the State of Alabama.

4.     JPMC is a "wholly owned subsidiary" of JPMorgan Chase Bank, N.A. that is not licensed by the O.C.C. as a "licensed operating subsidiary." JPMC is not regulated by

any federal or state agent – a rogue foreign entity.

5.    Chase Home Finance, LLC, ("CHASE"), a Delaware foreign limited liabity company,  is not qualified to do business in Alabama and has no known principal place of business. Chase is a "wholly owned subsidiary" of JPMorgan Chase Bank, N.A. that Plaintiff believes to be not licensed by the  O.C.C. as a "licensed operating subsidiary" at the time of the foreclosure on July 13, 2009.

6.    *Fictious parties John Does and Jane Does.*  These parties are a party to a "*secret agreement*" settling claims to property Plaintiff had legal title to and a right to possession with Ms. Sims, the *predecessor in title.*  Plaintiff, *successor in title*, was not a party to or privy to. There is a 2 year statute of limitations for fraud, and Plaintiff does not know the terms and provisions of the agreement.  Plaintiff will need the court to compel production of that agreement to state further claims related to that "secret agreement."

## AUTHORITY FOR  DECLARATORY JUDGMENT CLAIMS

1.    In *Tennant v. Chase Home Finance, LLC,* , 187 So. 3d 1172 - Ala: Court of Civil Appeals 2015, the court held

> **"A trespass to property is <u>a wrong against the right of possession</u> or entry.**" *Boyce v. Cassese,* 941 So.2d 932, 945 (Ala.2006). In order to be actionable, the entry on the land of another must not be authorized; ...  Trespass to chattel occurs when "`there is a "wrongful taking and carrying away of the property of another.""" *Wint v. Alabama Eye & Tissue Bank*, 675 So. 2d 383, 385 (Ala. 1996)."

2.    This case to recover Plaintiff's property spanning a period of 10 years and 3 declaratory judgment actions.  Plaintiff has been denied "the right of possession" of her property she had legal title to and legal possession of,  and in *Breland v. City of Fairhope*, 229 So. 3d 1078 Ala: Supreme Court 2016,  the court held there is

> "....[N]o period of limitation at all is applicable to an action for a declaratory judgment ... in cases involving a continuing harm ... the same constitutes at least **the equivalent of a <u>continuing invasion of plaintiff's property rights akin to a continuing trespass</u>** – a situation in which a new cause of action arises in plaintiff's favor ... each day (id. At 254; *see Dowsey v. Village of Kensington*, 257 N.Y. 221, 228, 177 N.E. 427 [1931])."(emp)

- 3 -

### The '2009' Ejectment Action

1.  In it's complaint filed on July 24, 2009,  (Exhibit "A") JPMC asserted to the court that

>   1.   JPMC is "qualified to do business in Alabama and doing business in Mobile County, Alabama."
>
>   2.   the "Mortgage by and between Carolyn E. Sims and Ameriquest Mortgage Company ... subsequently transferred and assigned to WM Specialty Mortgage, LLC ..."
>
>   3.   "... by virtue of foreclosure on July 13, 2009 ... JPMC ...  is the owner of ... 11101 Ben Hamilton Road, Grand Bay, Al 36541" and a "copy of the Foreclosure Deed is attached hereto, incorporated by reference and designated as Exhibit "A."
>
>   4.   Ms. Sims "has lost her right to redeem the property ... [she] has failed and refused to vacate the aforesaid property despite [JPMC's] demands to do so."

2.  First, on October 9, 2009, Plaintiff obtained a certificate from the Alabama Secretary of State certifying "... no record is found to exist for any entity by the name: JPMC Specialty Mortgage, LLC" and JPMC could not maintain the ejectment action. (Exhibit "B")

3.  Second,  there was no evidence of a mortgage, an assignment of the mortgage and no evidence JPMC had  authority to invoke the power of sale. In *Gray v. Federal National Mortgage Association*, Ala: Court of Civil Appeals 2014 the court held that "... in *Coleman v. BAC Servicing*, 104 So. 3d 195 (Ala. Civ. App. 2012), the court explained:

>   "...The note is the cow and the mortgage the tail. The cow can survive without a tail, but the tail cannot survive without the cow.'" Id. at 387 (quoting *Best Fertilizers of Arizona, Inc. v. Burns*, 117 Ariz. 178, 179, 571 P.2d 675, 676 (Ct. App.), reversed on other grounds, 116 Ariz. 492, 570 P.2d 179 (1977))." ... ("**The transfer of a... note given for the purchase money of lands, whether the transfer be by delivery merely or in writing, expressed to be with or without recourse on the transferor, passes to the transferee the lien of the vendor of the lands**."). '"[O]nly the holder of the obligation can foreclose."' *Coleman*, 104 So. 3d at 205. ..." (emp)

- 4 -

4.    Third, JPMC could not prove legal title or a right to possession because JPMC's foreclosure deed was **unexecuted and unrecorded.** In *Cadle Co. v. Shabani,* 4 So. 3d 460 - Ala: Supreme Court 2008, "... It is clear ... from the record before us that [Cadle] could not prove that it held title ... Because [Cadle] lacked standing to maintain the ejectment action, the trial court lacked subject-matter jurisdiction over this case."

5.    At the commencement of JPMC's ejectment action, Ms. Sims remained in possession of the property and was the legal title holder of record.    In *Douglass v. Jones,* 628 So. 940 – Ala:  Court of Civil Appeals 1993, the court held it

> "is a general proposition of law that <u>**a prerequisite to recovery in a statutory ejectment action is that it must appear that the plaintiff held title when the suit was commenced**</u> and continued to hold title until the time of trial. *Mid-State Homes, Inc. v. Moore,* 460 So.2d 172 (Ala.Civ.App.1984). **Such a plaintiff generally <u>cannot recover where he or she fails to show title</u> in himself or herself,** regardless of whether the defendant's title is valid. *Mid-State Homes ...* **that title to the property was in the executors... title and absolute authority over the property** of the estate rested with the co-executors." (emp)

6.    Fourth, JPMC had no "cause of action" or right of possession.

7.    In *Ex parte Simpson* 36 So. 3d 15 Ala: Supreme Court 2009, the court held "Under present law **an assignment passes the title** to the assignee" and by quit claim deed, Plaintiff had **"title to the property ... title and absolute authority over the property"** and "continued to hold title until" the dismissal of JPMC's ejectment action on August 30,2010. (Exhibit "C")

### Plaintiff's Non-Party Complaint To Intervene

8.    JPMC's foreclosure deed was unexecuted and unrecorded – there was no evidence to support JPMC's claims of a 'foreclosure sale.' Without any legal authority whatsoever, on September 25, 2009, Plaintiff got a call that the SPCA had contacted Ms. Sims for the removal of her animals from the property. Plaintiff spoke with Elizabeth Fotts at the SPCA and JPMC's agent that evening and

> "... he told me that he had been instructed to go out and change the locks on the doors. When he got there, there was animals on the property, and **he was instructed to open the door to let the dogs out and open the gate and let the**

**horse out**, ... so he called the SPCA ... but he was instructed to open the gate and turn the horse out ... **but he was instructed to open the gate and turn the horse out ...**"(Tipp's deposition May 24, 2017 Pg 49-50)

9.      JPMC, by forcible entry and trespass, changed the locks on the doors in September 2009 and Plaintiff filed a request for a TRO that JPMC had "taken possession of the property without a court order." Plaintiff was appearing pro se as the *successor,*

"... we were in court. I think it was around October the 9th, and at that time, [George C. Gaston at Sirote & Permutt] read some emails and referenced emails regarding their agents contacting the SPCA for the removal of animals, and at that time, **Judge Graddick asked if I had copies of it, and he said, no, so [Judge Graddick] told them to give it to me** ... But George was telling Judge Graddick about it ... That their agents had to contact the SPCA ... He told him that there was a hog and a horse on the carport. The horse was in the pasture. It wasn't on the carport ... Because he was in his pasture. I mean, he had been there since before my mother passed away ... Yeah, he had a stall – a place to get under ... **I just know that they went to the property and removed the animals ... No ... They had already went in and changed the locks on the doors**." (emp)(Tipp's deposition May 24, 2017 Pg 48-54)

10.     A complaint to intervene was filed on behalf of Plaintiff on February 3, 2010 for wrongful foreclosure, trespass and trespass to chattels.  On February 22, 2010, JPMC filed a motion to dismiss Plaintiff's complaint.  JPMC had no legal title to the property and there was no evidence of the alleged 'foreclosure sale,' but JPMC argued

1.      **Ms. Tipp has no valid legal interest in the subject real property**; therefore, she is not a proper party to this case. **Specifically, Ms. Tipp lacks standing** to challenge whether [JPMC] had the lawful right to foreclose the mortgage given by Carolyn E. Sims ("Ms. Sims"), the Defendant, and whether the foreclosure was lawful and proper under Alabama Law.. .

2.      . . . notwithstanding Ms. Tipp's claim that she succeeded to Ms. Sims' interest in this case by virtue of a quitclaim deed executed on August 22, 2009, **Ms. Tipp lacks standing** to raise these issues.

3.      **Ms. Tipp lacks standing *because*** the quitclaim deed was executed over a month after [JPMC] had already conducted the foreclosure sale on July 13, 2009 ...

4.      Ms. Tipp asserts the claims of wrongful foreclosure, slander of title, trespass, and trespass to chattels against [JPMC]. Each of these

claims is predicated on Ms. Tipp having a valid legal interest in the subject real property. However, **because her alleged interest in the real property came over a month after the foreclosure sale conducted by Plaintiff, Ms. Tipp lacks standing** to challenge the foreclosure or to bring her other claims.

5.    The true defendant, Carolyn E. Sims, has already filed an Answer to Plaintiff's Complaint with the assistance of counsel and is able to defend Plaintiff's ejectment claim against Ms. Sims."

11.    JPMC argued "Specifically, Ms. Tipp **lacks standing to challenge** whether [JPMC] had the lawful right to foreclose the mortgage." In *Maiden v. Federal Nat. Mortg. Ass'n*, 86 So. 3d 368 Ala:Court of Civil Appeals 2011, the court held JPMC's "argument" is a "misstatement" of the law because in an ejectment action, "the burden is on the plaintiff, not the defendant, to prove superior title to the property in question. *See MacMillan Bloedell, Inc. v. Ezell,* 475 So.2d 493, 49697 (Ala. 1985). If the plaintiff fails to do so, the defendant will prevail in **the action without the necessity of proving its title in the property**." JPMC had no title by virtue of an unexecuted and unrecorded foreclosure deed.

12.    Plaintiff's  interest in the property was  as *successor  in title* pursuant to Rule 25(c). In *American Credit Co. of Alabama, Inc. v. Bradford*, 414 So. 2d 119 Ala: Court of Civil Appeals 1982, the court held Plaintiff did not have to prove her title by quitclaim deed in the 2009 case, because  "**[t]he most significant feature of Rule 25(c) is that it does not require that anything be done after an interest has been transferred** ... In case of any transfer of interest, the action may be continued by or against the original party ... **the judgment will be binding on his successor in interest even though [s]he is not named**."(emp)

13.    During oral arguments on July 29, 2010, Judge Graddick entered an order that the "MOTION TO DISMISS PURSUANT TO RULE 12(B) filed by JPMC SPECIALTY MORTGAGE, LLC is hereby GRANTED." Judge Graddick granted JPMC's motion to dismiss and JPMC demanded possession of the property, but JPMC's request was denied and JPMC was ordered to submit to discovery.

14.    JPMC's ejectment action continued against the "original defendant." On

August 27, 2010, JPMC filed a Rule 41(a)(2) Motion to Dismiss, or in the alternative, Request for Permission to Secure the Property. On August 30, 2010, the court entered an order that the "MOTION TO DISMISS, OR IN THE ALTERNATIVE SUMMARY JUDGMENT filed by JPMC SPECIALTY MORTGAGE LLC is hereby GRANTED. This case is hereby **DISMISSED, with prejudice.**" (Exhibit "C") Judge Graddick **dismissed** JPMC's ejectment action, and specifically did not grant JPMC "permission to secure the property."

### The 2010 Hostile Takeover

15.   This is not an action contesting a voidable "foreclosure sale" – JPMC's foreclosure sale was deemed void. JPMC had no legal title, no evidence it was the assignee of the mortgage, or holder of the promissory note with authority to invoke the power of sale and could not convey legal title. In *Sturdivant v. BAC Home Loans Servicing, LP,* 159 So. 3d 15 Ala: Court of Civil Appeals 2011

> "In *Hrovat v. Bingham,* 341 S.W.2d 365 (Mo.Ct.App.1960), the Missouri Court of Appeals stated: "The general rule is that **if the holder of the mortgage has no right or power to foreclose, then the sale under an attempted foreclosure is void and no title is conveyed**...." 341 S.W.2d at 368. ... **any deed acquired by a purchaser from an unauthorized foreclosure sale is void** *ab initio* ..." (emp )

16.   In *Maiden,* the court held Plaintiff, *successor in title,* prevailed in the 2009 ejectment action "without the necessity of proving [her] title in the property." Plaintiff posted signs on September 9, 2010, to "KEEP OUT" and "NO TRESPASSING:PRIVATE PROPERTY."

17.   Plaintiff was in peaceful possession of the home her parents when she got a call on December 11, 2010 that there were people at her mother's house with dumpster's. Plaintiff did not know if house was sold after the **dismissal** of JPMC's ejectment action or not.

18.   When Plaintiff got to the house,[1] there was a dumpster in the front and one in the back. Plaintiff was told the 'trash out' on the home of her parents that she had legal title to and legal possession of by the order of the court, was courtesy of "the bank."

---

1      Plaintiff lives in Mobile and her mother's house is in Grand Bay.

19.     The contents of all the rooms had been disposed of and the crew was in the kitchen/pantry throwing everything into wheelbarrow's and wheeling it out the front and back door into dumpster's. Defendant's disposed of everything of Plaintiff's parents[2] that remained in their home that she lawfully owned and had legal possession of – keepsakes and other personal items that can never be replaced.

20.     Defendant's went onto Plaintiff's property on December 11, 2010 in contempt of Judge Graddick's order of dismissal and in violation of signs posted by Plaintiff to "KEEP OUT" and "NO TRESPASSING:PRIVATE PROPERTY."[3]  Plaintiff's property was unlawfully seized by Defendant's without a court order.   "The bank" conducted an unauthorized 'trash out' on property Plaintiff had legal title to and legal possession of and "rekeyed" the locks locking Plaintiff out of her house for the second time, listed her property for sale, and had her property sold pending closing. JPMC was an uncontrollable foreign entity that unrestrained by the laws of this state or an order of the court.

21.     Plaintiff filed a declaratory judgment action on February 9, 2011, to recover possession of her property. JPMC's ejectment action that the court never acquired jurisdiction over, was dismissed pursuant to Rule 41(a)(2).   In *State v. Nguyen*, 38 So. 3d 72 - Ala: Court of Civil Appeals 2009, the court held JPMC's "voluntary dismissal without prejudice `does not qualify as an involuntary adverse judgment so far as the plaintiff is

---

2       Plaintiff's father, born March 28, 1901, passed away on March 4, 1983 – his father was born in 1865 and his mother in 1875.  Plaintiff's mother, born September 7, 1920, passed away on August 7, 2002. *'Ressie and Bessie'* were born 19 years apart and passed away 19 years apart.

3       "Property inspected on 10/13/2010 and found to be vacant and secure property considered to be **vacant but not abandoned due to "No Trespassing" and "Keep Out" signs"** which were recently posted at this property ..." ...

November 24, 2010,"... advise if we should send a 134 letter and secure the property. **Signs are posted on the property to keep out, no trespassing**."(emp)

December 1, 2010 "**vacant ready for trash out** no address at street **found vacant house unsecured** and **visitor log inside** ... **rekey** scheduled for tomorrow."(emp) ...

December 2, 2010 "... **rekeyed** ... **if we go to PP eviction** I believe we will be on hold for **the affidavit issues** ... **We will move forward as a Vacant property** and ... **remove all remaining items left behind** ... **trash out per evictions** coordinator ..."(emp)

concerned. ... since the plaintiff has acquired that which he sought, **the dismissal** of his action and the right to bring a later suit on the same cause of action, **without adjudication of the merits**." (emp)

22.     Defendant's asserted before the court in a motion for summary judgment as "undisputed" facts, that

> 2.     Ms. Sims's Mortgage was subsequently assigned from Ameriquest to WM Specialty Mortgage, LLC, a subsidiary of Washington Mutual Bank ("WaMu") on November 30, 2007.

> 3.     "On September 25, 2008, WaMu was taken over by the Office of Thrift Supervision, an agency of the US Department of Treasure, and then placed into receivership with the Federal Deposit Insurance Corporation ("FDIC"). Pursuant to the Purchase and Assumption Agreement between the FDIC and JPMorgan, the FDIC sold certain assets of WaMu, which included Ms. Sims's Mortgage and Note, to JPMorgan ...

> 4.     On July 13, 2009, JPMC conducted a foreclosure sale on Ms. Sims's property. JPMC was the highest bidder and the Foreclosure Deed in JPMC's favor was executed on the same day. (Complaint at p.4; Foreclosure Deed, Exh. F) ... On July 24, 2009, Ms. Sims remained in possession of the property, and JPMC filed an ejectment action ..." (emp)

> 5.     On August 22, 2009 , Ms. Sims executed a Quitclaim Deed in favor of Ms. Tipp purporting to convey to Ms. Tipp all of the rights, title and interest that Ms. Sims had in the property  .. .

> 6.     On February 3, 2010, Ms. Tipp filed a Complaint in Intervention in the 2009 case, ... On July 29, 2010, the Court granted JPMC's Motion to Dismiss and Dismissed Ms. Tipp's claims.

> 7.     Ms. Tipp then instituted the present action by filing a Complaint on February 9, 2011 ..."

23.     Defendant's failed to mention JPMC's ejectment action was "voluntarily dismissed" on August 30, 2010 and rendered a nullity and JPMC did not have a writ of possession or court order.

24.     JPMC did not "bring a later suit on the same cause of action" but Defendant's "maintained" the "same cause of action" through the motion for summary judgment asserting those "dismissed claims" as undisputed fact. In *Chesnut v. Board of*

*Zoning Adjustment,* 208 So. 3d 609 - Ala: Court of Civil Appeals 2015, held that

> "... "Although cases involving a Rule 41(a)(1) dismissal "are not perfectly analogous to cases in which the ... **court lacks subject matter jurisdiction, both contexts present the question of the court's continuing power over litigants who do not, or no longer, have a justiciable case before the court**." *Chemiakin v. Yefimov,* 932 F.2d 124, 128 (2d Cir.1991). Thus, it is sometimes stated that **a Rule 41(a)(1) dismissal deprives the trial court of "jurisdiction" over the "dismissed claims**." ..." (emp)

25.     Plaintiff's claims were barred by the doctrine of res judicata because they were the" same claims dismissed by the Court in the 2009 Case." An essential element of res judicata is a "court of competent jurisdiction" and the "same parties" and same "cause of action." Plaintiff was never a party the 2009 case – JPMC "she is not a proper party to this case. **Specifically, Ms. Tipp lacks standing**" – "lack of subject-matter juridiction."

26.     JPMC's foreclosure deed attached as Exhibit "A" to the complaint filed on July 24, 2009, indicates it was executed and notarized on July 13, 2009 – that "same day" by **Amy Barbour**, as auctioneer and attorney-in-fact. That deed was unexecuted, unnotarized and unrecorded and has never been executed, notarized and filed of record.

27.     JPMC could not prove that it held title in 2009 and "lacked standing to maintain the ejectment action, the trial court lacked subject-matter jurisdiction over this case." In *Hayes v. White,* 579 So. 2d 1340 - Ala: Court of Civil Appeals 1990, the court held that "**We find it clear from the record that the trial court never acquired jurisdiction of this cause** and that its ultimate dismissal was proper. Where no cause is lawfully before the trial court, **no intervention is possible.**" (emp)  Therefore, as a matter of law, the "dismissal" of Plaintiff's complaint to "intervene" in a case she was not made a party to was not an adjudication "on the merits" of Plaintiff's claims to recover stolen property.

28.     Defendant's motion for summary judgment filed on March 22, 2011, evidenced that on "**July 24, 2009**, Ms. Sims remained in possession of the property, and JPMC filed an ejectment action ..."

29.     As "EVIDENTIARY SUPPORT FOR MOTION," to bar recovery of Plaintiff's property, Defendant's evidenced a "Foreclosure Deed executed on July 13, 2009, and **recorded ... on July 30, 2009** ..." attached as Exhibit "F."

- 11 -

30.    Defendant's motion evidences on its face that on July 24, 2009, JPMC "lacked standing to maintain the ejectment action, the trial court lacked subject-matter jurisdiction over this case."

31.    As in 2009, Defendant's "Foreclosure Deed" indicates it was executed and notarized on July 13, 2009" – that **"same day,"** except Defendant's foreclosure deed submitted to the court in 2011 was executed by **Kristin Robinson**.

32.    Defendant's foreclosure deed barring Plaintiff's claims, evidences on its face, that it was not of record in the 2009 case when the action was filed on **July 24, 2009 at 11:11**. Defendant's foreclosure deed before the court was **"recorded on July 30, 2009" – at 12:36 pm – 6 days later.**

33.    Plaintiff was denied the right to proceed as the legal title holder of the property with a right to possession by a foreclosure deed that was outside of the record in the 2009 case.

34.    Defendant's argued "... it is undisputed that Ms. Sims failed to deliver possession of the property to the purchaser, JPMC, within ten days of receiving written demand for possession. Consequently, Ms. Sims was left with no right, title or interest in the property."

35.    Plaintiff was the legal title holder of record and "continued to hold title" until the 2009 case was dismissed. Ms. Tipp had "title and absolute authority over the property." (*see Douglass*) Judge Graddick did not terminate the right of redemption, and did not terminate Plaintiff's legal title.

36.    It is undisputed that Judge Graddick failed to deliver possession of the property to JPMC on July 29, 2010 and August 30, 2010 and dismissed JPMC's claims.

37.    JPMC's Rule 41 dismissal rendered the 2009 case "a nullity" and rendered Plaintiff's "wrongful foreclosure" claim a "moot" point. Plaintiff acquired possession of the property by the court order dismissing the 2009 case.

38.    In *Ferguson v. Commercial Bank,* 578 So. 2d 1234 Ala: Supreme Court 1991, this court held "Mootness is a jurisdictional issue which does not preclude a second action on the same claim if the justiciability problem can be overcome. *McCarney v. Ford Motor*

*Co.,* 657 F.2d 230, 233 (8th Cir.1981)."

39.    Second, Defendant's argued Plaintiff had no valid legal interest in the property which was deeded to her by Ms. Sims after the foreclosure deed had been executed and recorded in favor of JPMC; thus, she had no standing to assert her claims.

40.    In *Barnett v. Legacy Hospitality, LLC,* Dist. Court, SD Alabama 2016, "Rule 41 allows a plaintiff **to dismiss all of his claims** against a particular defendant; its text does not permit plaintiffs to pick and choose, dismissing only particular claims within an action." (emp)

41.    Plaintiff's interest in the property and  "standing" before any court  is a question of law established in *Chrysler Corp. v. Schiffer,* 736 So. 2D 538 Ala: Supreme Court 1999  where "... Rule 17(a)... applies to issues created by transfers that occur before the commencement of the action ... Rule 25(c) ... governs when an interest is transferred during the pendency of an action... "  Plaintiff's interest was transferred during the pendency of JPMC's ejectment action filed on July 24, 2009 *after* the foreclosure sale on July 13, 2009.  And "... in regard to the parties "standing" issue is the right of the individual to proceed, and  Rule 25(c) answers that question in [her] favor." (emp)

42.    In *Gallagher Bassett Servs., Inc. v. Phillips*, 991 So.2d697, 700 (Ala. 2008), the court held the effect of JPMC's "voluntary dismissal without prejudice is to render the proceedings a nullity and leave the parties as if the action had never been brought."

43.    This action is based on tumultuous and reprehensible conduct of all Defendant's to pull the wool over the eyes of the court by voluntarily dismissing an ejectment action where JPMC could not prove legal title and a right to possession of the property for the sole purpose of circumventing the penal effects of the 'door-closing' statute.

44.    JPMC's claims were barred by the 'door closing' statute. In *Green Tree Acceptance, Inc. v. Blalock,* 525 So. 2d 1366 Ala: Supreme Court 1988  the court held

> "**This section of the Code is part of a statutory scheme** ... **foreign corporations cannot circumvent the penal purpose of the statute**. ... Furthermore, **if this Court does not permit Green Tree to recover** the mobile home or the reasonable value thereof **under a contract theory, but then permits Green**

**Tree to recover** the mobile home or its reasonable value **simply because it labels the theory in some other way, then foreign corporations could easily circumvent the statute. Our prior decisions have made it clear that foreign corporations cannot circumvent the penal purpose of the statute.** See Sanjay, **supra.**"(emp)

45.     In *American Credit Co. of Alabama, Inc. v. Bradford*, 414 So. 2d 119 Ala: Court of Civil Appeals 1982,  **"This case involves the interpretation and application of ARCP rule 25(c)** ..." and like Plaintiff,

"... Even though Barclays  **was never made a party** ... the judgment is as binding upon them **as if they had been such a party**. *United States v. Griffith Amusement Co.*, 94 F.Supp. 747 (W.D.Okla.1950). Yarber **is protected from any separate action** of Barclays against Yarber **based upon the same subject matter, controversy, facts,** indebtedness or liability here involved ..." (emp)

46.     In *Brantley v. Meeks,* 142 So. 3d 567 Ala: Court of Civil Appeals 2012, the court held "the order pertaining to Prudential disposes of any claim against the Scrushys that Brantley might maintain with regard to the original claims ..." The order dismissing JPMC's claims against Ms. Sims, assignor and *predecessor in title* disposed of any claims JPMC "might maintain with regard to the original claims ..." to ownership of the property.

47.     JPMC was permanently enjoined from enforcing the alledged foreclosure on the property and maintaining **any action** in any court to acquire possession of the property.

48.     JPMC did not "bring a later suit on the same cause of action" to recover on its claims, but circumvented the 'door closing' statute by voluntarily dismissing it's claims and taking the property by forcible entry and trespass.

49.     Defendant's "maintained" the "same cause of action" as affirmative defenses that renders any judgment or order in favor of JPMC through  a foreclosure sale and the 2009 ejectment action, void ab initio for lack of subject-matter jurisdiction.

50.     Plaintiff's claims were barred by "two key arguments" where there was no **appealable judgment or writ of possession in favor of JPMC** – Plaintiff has been deprived of her property and denied due process of the law. In *Green Tree,* the court held the purpose of the 'door-closing' statute "... is to provide some power for the State to **protect**

- 14 -

**Alabama residents from possible abuse by uncontrolled foreign corporations**. ..."

### The 2013 Declaratory Judgment Action

51.     After Plaintiff's claims were barred as *successor in title,* a declaratory judgment action was filed on behalf of Ms. Sims, the 'original' defendant, *assignor* and *predecessor in title* on February 26, 2013 styled as Carolyn E. Sims v JPMC Specialty Mortgage, LLC Case No. 02-CV-2013-900439.00 ("the 2013 case").

52.     JPMC had no legal title and its claims were dismissed, but JPMC argued on April 4, 2013 that the complaint "...asks that Ms. Sims be declared the lawful owner of the Property, these requests are technically the same, as a declaration that Ms. Sims is the lawful owner of the Property would effectively grant Ms. Tipp title to the Property pursuant to the previously executed Quitclaim Deed" and therefore, Ms. Sims's claims were barred by 'res judicata.'

53.     The record of the 2009 ejectment action evidences Plaintiff had "**title to the property ... title and absolute authority over the property**" and "**continued to hold title until**" the dismissal of JPMC's ejectment action on August 30,2010. (s*ee Douglass*)

54.     JPMC argued ".... R.CIV. P. 41 governs dismissal of actions. Rule 41(a)(1) was inapplicable to JPMC's dismissal. Rule 41(a)(2) was the only open road and the ... trial court followed it..." [4]

55.     There **was no appealable judgment** and Plaintiff's right to recover her property was barred contrary to the record of the 2009 ejectment action and prevailing law.  The trial court found JPMC was entitled to possession after evidencing  in its motion to dismiss that the property was "vacant"[5]  and JPMC and Chase were entitled to

---

[4]" ... **There was a final ruling on the merits**. ... Bewilderingly, Ms. Sims says that her Complaint against JPMC is based on actions of JPMC **after the dismissal** of the ejectment action. This is nonsense for two reasons. First, at the end of the 2009 Case before Judge Graddick, the status of the property was that it was owned by JPMC, and a final order (see above) had been entered by Judge Graddick dismissing the claims of Ms. Tipp . . . **The net result is that as of 90 days after the dismissal** of the ejectment action it would not be possible for JPMC to commit property torts on its own property." (emp)

[5]     on August 27, 2010,  when discovery was due, JPMC filed a Motion to Dismiss, or in the alternative, Request for Permission to Secure the Property (emp) with

a judgment as a matter of law because those claims were barred by "res judicata."

56.    That case was appealed and remanded in *Sims v. JPMC Specialty Mortgage, LLC*, 218 So . 3d 376 Ala: Court of Civil Appeals 2016. In *Sims,* the same parties in the 2011 case that barred Plaintiff's claims,

> "... JPMC and Chase also cite *Williams v. Moore*, 36 So.3d 533, 540 (Ala.Civ.App. 2008), for the proposition that "***successors in title are in privity with their predecessors in title***" and argue that, **_because_ Sims conveyed any interest that she had in the property to Tipp via the quitclaim deed**, privity existed between Sims and Tipp ..."

> ... in *Williams*, ... "we concluded that **a judgment that had ascertained the property rights** of the parties in the earlier action precluded relitigation of those same issues with regard to their successors in interest.

57.    In *Sims*, the court found JPMC does not claim ownership of the property by "a judgment that had ascertained the property rights" of the parties in the 2009 ejectment action, – JPMC argues  those claims of criminal activity "... could not have accrued after the 2009 action because, after the circuit court had granted its motions to dismiss ... its complaint against Sims, **it owned the property** and, therefore, its actions on the property after that time could not have been torts against Sims."

58.    The court in *Sims,* citing *Gallagher*, the court  established ALL of JPMC'S claims of ownership of the property  were rendered " ... a nullity ..  as if the action had never been brought.  ..." JPMC had no "interest in the property" and  JPMC's claims of ownership by virtue of a foreclosure sale were dismissed rendering JPMC's foreclosure sale invalid and void.

59.    Defendant's argued on August 4, 2017 that

> "... **it absolutely cannot be disputed ... in good faith that the dismissal of the 2009 action was anything other than without prejudice**. ... Consequently, when the Court granted JPMC's motion in the 2009 Case ... it was granting a motion to dismiss the case without prejudice... ***the true facts* are that the dismissal of the 2009 Case was** without prejudice and **not an adjudication on the merits as to JPMC's ejectment claim**. ...

> **Despite the foregoing undisputed facts and law, [Ms. Sims] blatantly**

___

an affidavit  that the property was "vacant" and a  report that "... There is still personal belongings at this location" (emp) – the property needed be to "secured."

**misrepresents the 2009 Case's dismissal** by stating, ... **The Order did not deny the request for possession,** since that relief was requested in the alternative. And, as demonstrated, the dismissal was without prejudice ...

[Ms. Sims] acknowledged ... **JPMC could have re-filed the ejectment action in another lawsuit** ... (C-869)

[Ms. Sims] favorably cited to ... *Gallagher*..."'**[T]he effect of a voluntary dismissal ... is to render the proceedings a nullity and leave the parties as if the action had never been brought**.'"(emp)

60.     On remand, Defendant's were ordered to submit to further discovery and Defendant's records evidenced **after the dismissal** on August 30, 2010, signs were posted by Ms. Tipp

- "Property inspected on 10/13/2010 and **found to be vacant and secure property** considered to be **vacant but not abandoned** due to "**No Trespassing" and "Keep Out" signs**" which were recently posted at this property ..."(emp)

- November 24, 2010, there was a request to "... advise if we should send a 134 letter **and secure the property. Signs are posted on the property to keep out, no trespassing.**"(emp)

- December 1, 2010, Defendant's found the property was "**vacant ready for trash out** no address at street **found vacant house unsecured and visitor log inside** ... rekey scheduled for tomorrow."(emp)

- December 2, 2010, "... rekeyed ... if we go to **PP eviction** I believe **we will be on hold for the affidavit issues**"(emp) "... **We will move forward as a Vacant property** and ... **remove all remaining items left behind**... trash out per **evictions** coordinator ..."(emp)

59.     Defendant's records on remand evidence Defendant violated Judge Graddicks order of dismissal and signs posted by Ms. Tipp. Defendant's records evidence a 'trash out' and 'lockout' without a writ of possession.

60.     In response to the court, Defendant's filed a supplemental brief on November 17, 2017 arguing to the court that Defendant's actions on Ms. Tipp's property was not 'unauthorized' or 'tortious,' and JPMC had a right to possession because

"... On August 27, 2010, **JPMC moved the Court for a voluntary dismissal** of its ejectment suit **after JPMC's agent represented in an affidavit that the**

**Property was vacant,** and the Court subsequently granted the motion. Although [Sims] now challenges JPMC's 2010 representations about the Property being vacant, **she and her attorneys remained silent at that time and allowed the ejectment action to be dismissed**. Because any personal property remaining in the Property had been abandoned by [Sims], **Defendants submit that no writ of possession or court order would have been required to remove abandoned property**."[6](emp)

61.    Defendant's argued Plaintiff's *predecessor in title,* and her attorney's "remained silent at that time and allowed the ejectment action to be dismissed" and learned the property was "vacant" on August 27, 2010, but the record evidences that on

- **September 24, 2009,** "**Close eviction ... Rekey will be complete within 48 hours ... We will need a boardup done.**"(emp)
- November 3, 2009, **"FU ON EVICTION"**[7]
- November 14, 2009, **"FU on eviction"**
- November 17, 2009, Chase Home Finance sent letters to Precision Asset Management and Atlas REO cancelling marketing assignments "due to a change in account status.
- December 18, 2009, **"FC f/u."**

---

62.    On October 9, 2009, Plaintiff obtained the certificate from the Alabama Secretary of State evidencing JPMC was not "qualified to do business in Alabama" as argued in its complaint. On February 22, 2010, JPMC argued it

"... would also like to point out that, **contrary to Ms. Tipp's assertion** in Paragraph 5 of her Complaint in Intervention that **Plaintiff is not qualified to do business in Alabama** and that its auctioneers were not properly authorized to foreclose on the property, **[JPMC] has full authority to conduct foreclosures and initiate ejectment proceedings in Alabama**. [JPMC] is the subsidiary of **JPMorgan Chase Bank**, a federally chartered bank. Pursuant to the National Bank Act, 12 U.S.C.A. § 1 et seq., **Plaintiff had authority to foreclose on Ms. Sims' mortgage and has authority to seek its ejectment action currently before this Court, and this authority preempts state registration and licensing requirements**. *See Watters v. Wachovia Bank, N.A.,* 550 U.S. 1, 7

---

6     JPMC's alternative request was for "permission to secure the property" with an affidavit and report, that "... [t]here is still personal belongings at this location."

7     JPMC's ejectment action was barred by the 'door-closing' statute and JPMC's foreclosure deed was **unexecuted and unrecorded.** (C-57-59)

(2007). Thus, even if Ms. Tipp had standing to make such allegations, they do not form a basis upon relief can be granted." (emp)

63.    JPMC asserted that the agreement between the FDIC and Chase "explained" why JPMC had no assignment in the record.[8]  In it's motion in 2011, Defendant's argued "Ms. Sims's Mortgage was subsequently assigned from Ameriquest to WM Specialty Mortgage, LLC, a subsidiary of Washington Mutual Bank ("WaMu") on November 30, 2007 ... On September 25, 2008, ... the FDIC sold certain assets of WaMu, which included Ms. Sims's **Mortgage and Note, to JPMorgan** ..."[9] Sometime between February 22, 2010 and March 22, 2013, Chase acquired the "note."

64.    JPMC did not produce the note in 2009 and Defendant's did not produce the note in 2011.[10] In *Sims,* the court found

> "JPMC also alleged that **its acquisition of the mortgage was proper pursuant to an agreement between the Federal Deposit Insurance Corporation and JPMC's parent company,** Chase, and that Tipp had failed to offer any legal authority in support of her assertion that JPMC had been required to record the assignment of the mortgage to JPMC. JPMC also contended that it had, in fact, had **"full authority to conduct foreclosures and initiate ejectment proceedings in Alabama" under federal law,** contrary to Tipp's assertions."

65.    In *Watters v. Wachovia Bank, NA,* 550 US - Supreme Court 2007, the court held

> "...The NBA specifically authorizes federally chartered banks to engage in real estate lending, 12 U.S.C. § 371, and **"[t]o exercise ... such incidental powers as shall be necessary to carry on the business of banking,"** § 24 Seventh. **Among incidental powers, national banks may conduct certain activities through "operating subsidiaries,"** discrete entities authorized to

---

8    "... The Agreement serves to explain how [JPMC] came in possession of the subject mortgage absent any assignments which are not already in the record. [JPMC] merely pointed this Court to a public U.S. government website where the Agreement can be found, and the authenticity of the document is not likely to be called into question. ..."

9    The assignment was ineffective to convey legal title. Dawn Reynolds as "agent" for Citi-Residential as agent for Ameriquest.

10    "Sims'[s] claims against Chase in the [2013 action] are based upon Chase having placed a forged endorsement on the purported original of Sims'[s] promissory note two and one-half years after the foreclosure sale.  The matter of forgery only came to light in late 2013 when Sims was finally able 387*387 to obtain discovery from [JPMC and Chase] ...."

**engage solely in activities the bank itself could undertake**, and subject to the same terms and conditions as the bank. See § 24a(g)(3)(A); 12 CFR § 5.34(e).

... Wachovia Bank is an OCC-chartered national banking association that conducts its real estate lending business through respondent Wachovia Mortgage Corporation, a wholly owned, North Carolina-chartered entity licensed as an operating subsidiary by OCC."

66.    JPMC, a wholly owned subsidiary of Chase Bank, is not "licensed as an operating subsidiary by OCC." JPMC  is not engaged in the business of "banking." Chase does not do its "real estate lending business through" JPMC, and  JPMC does not service mortgage loans, or engage in any banking activity.  JPMC is a rogue entity that is not regulated by any federal agency and is unconstrained by the rule of law engaging in mortgage fraud.

67.    Plaintiff asserted in the 2011 case over 9 years ago that JPMC had no legal interest in the property because "[a]ccording to the information and belief of plaintiff, AMERIQUEST ceased operations and its assets were purchased by CITIGROUP, INC, in September 2007."

68.    Defendant's asserted Chase Bank acquired Ms. Sims's mortgage from the FDIC on September 25, 2008, but Defendant's records obtained on remand in the 2013 case, evidenced that on December 26, 2008, Citi-Residential Lending, ("Citi-Residential) sent notice to the US Bankruptcy Court that "Citi Residential Lending sold the above Real Estate Secured Loan to CHASE HOME FINANCE LLC ... Servicing of the same will be transferred effective January 1, 2009..." (Exhibit "D")

69.    On April 20, 2009, prior to the foreclosure on July 13, 2009 by JPMC, Chase Home sent notice of an "ARM Payment Change" to John C. McAleer, III, the bankruptcy trustee, that "Chase Home Finance LLC holds a Deed of Trust on the Property." (Exhibit "E")

70.    Chase Bank and it's wholly owned subsidiaries each claimed ownership of Ms. Sims's mortgage with different acquisition dates and from different sources, but Defendant's records evidence Ameriquest, CITIGROUP, the FDIC, Chase, Chase Home, nor JPMC, was the "assignee" of Ms. Sims's mortgage, nor the "holder" of the note.

71.     On November 22, 2002, Ameriquest executed an assignment of Ms. Sims's mortgage in blank and endorsed Ms. Sims's promissory note in blank and transmitted both to Bankers Trust by virtue of the LETTER OF TRANSMITTAL, B Collateral pursuant to the custody agreement dated June 30, 2000.(Exhibit "F")

72.     Defendant's records evidenced JPMC was not the "assignee" of Ms. Sims's mortgage when it conducted an unauthorized foreclosure sale on July 13, 2009, when it filed the ejectment action on July 24, 2009,  when it voluntarily dismissed the ejectment action – a fraud on the court, when it seized Plaintiff's property on December 11, 2010, or when  Defendant's  maintained false claims before the court to bar Plaintiff's recovery of her property.

73.     As records evidenced in 2009, Plaintiff had "title to the property ... title and absolute authority over the property" and "continued to hold title until" the dismissal of JPMC's ejectment action on August 30,2010 when it was seized by forcible entry and trespass.(*see Douglass*)

74.     In *Sims*, the court found "successors in title are in privity with their predecessors in title" and argue that, because Sims conveyed any interest that she had in the property to Tipp via the quitclaim deed, privity existed between Sims and Tipp."

74.     On remand, the 2009 case was rendered legally void with no res judicata effect. Defendant's then evidenced by deposition on June 30, 2017, that Ms. Sims "lacked standing,"

> "Ms. Sims ... **admittedly ha[d] no legal interest in the Property after deeding it to Ms. Tipp nearly eight (8) years ago.**" (emp)(C-871)

> "... *Wilmore v. Wilmore*, 91 So.3d 701 (Ala. Civ. App. 2011) **like Ms. Sims**, the appellants had **executed a quitclaim deed** ... **divested themselves of all interest in the property**, the Court held that **the appellants "ha[d] no legal standing** to challenge any action taken by the trial court **regarding that property** ... **Ms. Sims has no standing** to challenge **JPMC's title to the Property** ...

> ... **Ms. Sims lacks standing** to assert the claim ... because well before filing this case, **she quitclaimed all of her interest in the Property to Ms. Tipp, who is not a party to this action** ...

... even if the foreclosure sale were declared void, <u>Ms. Sims would have no claim to the Property</u> *because* she has conveyed all of her interest in the Property to her sister, Ms. Tipp <u>nearly eight (8) years ago</u> ...

... Both Ms. Sims and Ms. Tipp ***confirmed in their depositions*** that <u>Ms. Tipp has not deeded the Property</u> back to Ms. Sims, <u>nor has she executed anything transferring any rights to the Property</u> back to Ms. Sims. (Sims depo. at pp. 118; Tipp depo at pp.)"(emp)

75.     On remand, neither JPMC nor Ms. Sims had any interest in the property and no claims of legal title, but Defendant's maintained JPMC's claim of "title to the Property" through a foreclosure sale that was rendered a nullity pursuant to Rule 41.

76.     The property lost in foreclosure by Ms. Sims, was the home of their parents, Orester and Bessie Reus Tipp. On June 7, 2000, Plaintiff's mother, a widow, conveyed 5.75 acres to Ms. Sims by Warranty Deed retaining a life estate in the house and one-acre. Plaintiff's parents wanted their home and property to stay in the family and did not want it sold.

77.     Ms. Sims took no action to respond to JPMC's ejectment complaint and Plaintiff did not want her parents home lost by default in a foreclosure and wanted to try to recover the right of redemption, but Ms. Sims refused to give Plaintiff a quit claim deed[11] to property that had been given to her that she had already lost in a foreclosure she could have prevented.[12]

77.     An answer was due to be filed on August 24, 2009 and on August 22, 2009, in one last attempt to try to save the home of her parents, Plaintiff prepared a quit claim

---

11     Plaintiff's oldest sister asked Ms. Sims why she refused to give Plaintiff a quit claim deed where Plaintiff could try to redeem the home of their parents she had already lost in foreclosure, and Ms. Sims told her she didn't want Plaintiff to '*have it.*' Ms. Sims lost everything her parents had worked for that was given to her and didn't want Plaintiff to '*have it.*'

12     Ms. Sims and each of her sisters received a distribution from their aunt's estate the first of the year. Ms. Sims did not use that money to prevent the foreclosure on the property and was dismissed from bankruptcy on April 28, 2009 for failure to make her bankruptcy payments. Ms. Sims purchased a half-interest in an undivided interest in non-producing mineral rights at Dauphin Island for $11,000.00 that was deducted from the final distribution and redistributed to all the heirs instead of trying to save the home of her parents.

deed for the consideration of $250.00 and a power of attorney.[13]

78.     Ms. Sims conveyed "all the right, title, interest and claim or demand" in a property **she had already lost in foreclosure** and as attorney in fact for Ms. Sims, Plaintiff filed a timely answer and affirmative defenses that prevented losing the home of her parents by default.

79.     Plaintiff recovered the 2 acres for Ms. Sims that was not property described in the mortgage that she sold for $30,000.00 and she had claims against Chase Bank that she would not have had but for the fact Plaintiff paid her for a quit claim deed to recover the home of her parents.

79.     Defendant's evidenced "... Ms. Sims lacks standing to assert the claim ... because well before filing this case, **she quitclaimed all of her interest in the Property to Ms. Tipp, who is not a party to this action** ..." (emp)

80.     In *Ex parte Sterilite Corp. of Alabama*, 837 So. 2d 815 - Ala: Supreme Court 2002, the court held a "lack of standing is a jurisdictional defect and `cannot be cured ...'" In *Gardens at Glenlakes v. Baldwin Sewer,* 225 So. 3d 47 Ala: Supreme Court 2016 the court held Defendant's argument

> "... is, in fact, a real-party-in-interest inquiry. This question is distinct from the question of standing: It does not implicate the subject-matter jurisdiction of the trial court, and the trial court can address the issue, if properly raised, by applying Rule 17(a), Ala. R. Civ. P. ...'"

81.     In *Ex parte Simpson* 36 So. 3d 15 Ala: Supreme Court 2009, the court held "Under present law **an assignment passes the title to the assignee so that he is the owner of any claim** arising from the chose **and should be treated as the real party in interest under Rule 17(a)**[, Fed.R.Civ.P.]." (emp)

82.     Plaintiff was not substituted as the "real party in interest" after the court's opinion in *Sims*, or Defendant's arguments on remand.

83.     The record before the court evidenced neither Ms. Sims nor JPMC had any interest in the property and Plaintiff had "**title to the property ... title and absolute**

---

13     Plaintiff took the quit claim deed and power of attorney to her oldest sister and called Ms. Sims and told her it was there. When she had the documents executed and notarized, Plaintiff's sister gave Ms. Sims the money.

**authority over the property"** since 2009 and "continued to hold title."

84.     Ms. Sims did not want Plaintiff to "*have it*" after she had already lost it in foreclosure and after JPMC's claims were dismissed, she  made the statement once she would burn it to the ground.  Plaintiff was worried about having to fight her on that. Plaintiff's 'former attorney's' said Ms. Sims understood she wouldn't get the property back, or so they said.  The court in *Sims* determined the property rights of the parties in 2009 and 2013 – Ms. Sims had no interest in the property so that was settled.

85.     In *Ex parte Eagerton*, 129 So. 3d 267 Ala: Supreme Court 2013, the court's opinion in *Sims* "was an adjudication on the merits, and it became the law of the case ... The appellate court's decision is final as to all matters before it,  the law of the case."

86.     The first of June 2018, Defendant's made a settlement offer and wanted Plaintiff to relinquish her legal title and right to possession and agree to Defendant's settling those claims to Plaintiff's property with Ms. Sims, the *predecessor in title,* who lost the property in foreclosure – an offer Plaintiff could and did refuse. But that offer was refused by the attorney's on behalf of their "client" and  Plaintiff was then asked to meet with the attorney's and discuss the trial that had been rescheduled to sometime in September.

87.     Since 2009, Plaintiff paid all the legal cost to recover the home of her parents. Plaintiff has a mortgage and when she was having repairs done to her house, they found termites – termites was literally eating her out of house and home, and they had to tear out 3 sides of the house, tear off and rebuild a sunporch and replace the roof and  there wasn't funds to remodel her home as planned.

85.     Plaintiff used her inheritance, then her credit cards and her personal line of credit, and then, when she turned 62, she received her first social security check and qualified for disability with multiple debilitating and terminal medical conditions. Plaintiff does not have money and did not go through years of fighting for the home of her parents while on death row for Ms. Sims's benefit. Plaintiff sacrificed for her parents – it was a labor of love where she could save their home as a 'home place' for family gatherings, holidays, etc. because they deserved more of a legacy than a headstone Ms.

Sims left them with.

86.    On remand, Defendant's took the depositions of Ms. Sims and Plaintiff, and had mediations between Defendant's and Ms. Sims's, all of which Plaintiff paid for. Around the end of February 2018, after all the costs of litigation had been paid and the case was scheduled for trial, Plaintiff was asked to execute a fee agreement as attorney-in-fact for Ms. Sims "just in case" something happened to her and they would have a case, which Plaintiff did on March 2, 2018. Plaintiff remembers the date because it was when her oldest sister had hip surgery and she looked back on emails to see what the date was.

87.    Plaintiff repeated argued no one had authority to settle those claims on her behalf without her consent.   On or around June 8, 2018, after meeting with the attorney's and their spiel regarding their evidence, sole witness, etc., after 9 years, like Defendant's, Plaintiff's former attorney's asked Plaintiff to relinquish her title and right of possession so those claims could be settled on behalf of their client to avoid trial.

88.    Plaintiff was asked to relinquish her claims so Ms. Sims could recover the property she lost in foreclosure and monetary damages and Plaintiff would recover nothing.

88.    When JPMC conducted an 'unauthorized' foreclosure sale, and without any evidence or authority whatsoever, and after Defendant's went onto Plaintiff's property in September 2009 and rekeyed the locks and facilitated the removal of animals, an "Interior BPO" was done on 10/5/2009 with a "Repaired Amount 104000.00, As Is 94000.00."[14]

89.    The house was built prior to 1890 and had withstood the test of time and gone through many hurricanes. Plaintiff wanted to take it back in time as it was when her parents bought it with wainscoting, glass knobs and french doors, etc. But after Defendant's disposed of everything left in their home belonging to her parents, Defendant's then destroyed their home. Defendant's records evidenced there were roof leaks where blue tarps were put on the roof repeatedly and then tore off.

90.    Defendant's had the property sold several times, but Plaintiff stopped

---

14    **Estimated repairs $5000-$7500**

several closings and on February 4, 2013, Defendant's records evidenced that "had showings but **the dwelling in such bad shape. <u>Serious buyers are only interested in land value.</u>** See what you can do."

91.     JPMC did not have any legal interest in the property and had it been sold, it would have been torn down – courtesy of Defendant's and Ms. Sims.

91.     On September 23, 2014 there was an "Interior BPO ... **30 day value: 0.00.**" That was almost 6 years ago. There is black mold and rain rot – JPMC's foreclosure deed was unexecuted and unrecorded and it's claims were dismissed but Defendant's barred recovery of Plaintiff's property she had legal title to and legal possession of.

92.     Plaintiff refused the 'offer' to relinquish her legal title and right to possession established as the law of the case in *Sims,* and was told "*we don't need you*" to settle those claims and Ms. Sims could revoke her power of attorney – Plaintiff had executed a fee agreement as attorney-in-fact for Ms. Sims.

93.     Plaintiff's former attorney's told her if she wanted to recover her property she would have to file another lawsuit and "prove" JPMC's foreclosure sale was void to void a deed to Ms. Sims.

94.     And Plaintiff  was told she wasn't entitled to recover damages on her propertywhere the interior BPO went from $104,000.00 to $0.00 in 2014 either because "*Elizabeth borrowed that money and didn't pay it back*" and Plaintiff could put a trailer out there or tear the house down and re-use the lumber.

95.     Plaintiff fought to save the "home" of her parents, not a piece of property. When Plaintiff's oldest sister would ask about '*mama's house*' and getting it back, she said Plaintiff was the only one entitled to anything because she was the one fighting to save it. Plaintiff wishes she had lived to see that Ms. Sims got it back after Plaintiff did all the work.

96.     Contrary to her former attorney's arguments, Plaintiff did not have to "prove" JPMC's foreclosure sale was invalid. In *Maiden*  the court held JPMC's "argument" is a "misstatement" of the law because JPMC had  "the burden ... to prove superior title" and if it failed to do so,  as successor in title, Plaintiff prevailed "without

the necessity of proving its title in the property" –  JPMC had no title by virtue of an unexecuted and unrecorded foreclosure deed and its claims were dismissed.

97.    The court in *Sims* had already determined Elizabeth and JPMC had no legal title.   The only way Ms. Sims could have legal title to the property is if the foreclosure sale was valid because "[u]nder present law an assignment passes the title to the assignee so that [s]he is the owner of any claim arising from the chose and should be treated as the real party in interest under Rule 17(a)" (*Ex parte Simpson*)

98.    There was settlement conference on June 13, 2018. Plaintiff reminded the attorney again that no one could settle claims on her behalf without her consent. Plaintiff called the next day, June 14, 2018, to discuss the offer on property but was denied that information. Plaintiff called the court and a notice was filed that a settlement had been reached.

95.    In *Sims*, the court found "because Sims conveyed any interest that she had in the property to Tipp via the quitclaim deed, privity existed between Sims and Tipp ..." but Plaintiff **was not notified** of the settlement on her property nor made a party to the settlement.   Had Plaintiff not known there was a settlement conference, claims to her property would have been settled without her ever knowing.

96.    After 9 years, her property  was stolen *'again beyond the reach of the court.'* Plaintiff filed an independent action to vacate the void judgment against her asserting her claims as the *successor in title*.

97.    Plaintiff was told she wasn't entitled to damages because *"Elizabeth borrowed that money and didn't pay it back,"* and  but Ms. Sims' attorney's settled claims to property on behalf of their "client" that that court in *Sims* found she "... conveyed any interest that she had in the property to Tipp via the quitclaim deed..."

98.    Plaintiff knew the offer that was refused, six figures, but Ms. Sims's debt of $93,208.33 was forgiven,  she recovered the property she willingly lost in foreclosure on July 13, 2009, and five years after her second foreclosure on May 29, 2014.   Ms. Sims received monetary damages without ever paying any legal cost – Plaintiff recovered nothing.

99.  Plaintiff filed an independent action to vacate the void judgment against her that barred the recovery of her property in 2011 based on the "law of the case" established in *Sims* and prevailing law that the 2009 case had no legal effect, asserting her claims to recover possession of her property.

100.  On July 7, 2018, a "stipulation" of the parties was filed and on July 9, 2018, the court entered an order "Upon the joint stipulation of the parties, this matter is hereby DISMISSED WITH PREJUDICE as to all parties and all claims ..." Plaintiff's claims to recover her property and her property was disposed of in a case she was not a party to, but was the real party in interest.

101.  On July 31, 2018, JPMC filed a motion to dismiss asserting affirmative defenses to dismiss Plaintiff's complaint and pleading the 2011 motion for summary judgment through the 'back door' by attaching it as an exhibit – the same claims rendered a nullity by the court in *Sims*.

102.  JPMC "maintained" the same "cause of action" that was dismissed in 2009. As the court explained in *Chesnut v. Board of Zoning Adjustment*, 208 So. 3d 609 - Ala: Court of Civil Appeals 2015, the courts do not have jurisdiction over JPMC's "cause of action" because  JPMC's Rule 41 dismissal deprives the trial court of "jurisdiction" over the "dismissed claims." ..." rendering the judgment against Plaintiff void.   In its motion to dismiss Plaintiff's claims, JPMC argued

> "As for her claim directed to the 2013 Case (although she was clearly well aware of it), and **JPMC is free to settle with whomever it pleases, however it pleases.** Ms. Tipp may not like it and may think that Ms. Sims has no valid claims to be settled, but her opinions are of no factual or legal consequence and cannot constitute grounds to second-guess, much less set aside, the settlement. (emp)

103.  In the 2009 case, Defendant's records evidenced on November 8, 2010  that "... this is a post-foreclosure ejectment action. Issues arose when the defendant borrower's sister challenged the foreclosure ... **our ejectment case was not needed**" and     on November 17, 2017, "Defendants submit that **no writ of possession or court order would have been required to remove abandoned property**" that wasn't abandoned where JPMC did not have the right of possession or the right of entry and went onto the property with

signs posted.

104.   On August 7, 2018, Plaintiff's claims to recover possession of her property, was "dismissed with prejudice" and/or alternative motion for summary judgment filed through the 'back door' without Plaintiff having an opportunity to respond to JPMC's "motion for summary judgment."

105.   The court refused and failed to apply the 'law of the case' established in *Sims* that JPMC had no interest in the property and it's ejectment action was dismissed pursuant to Rule 41 and rendered a nullity –   there was no "court of competent jurisdiction" to bar Plaintiff's claims by  'res judicata' – the 2009 case was legally void and had no res judicata effect.  The court lacked jurisdiction over those "dismissed claims" rendering the judgment entered void for lack of subject-matter juridiction.

106.   Like in 2009, JPMC went '*beyond the reach of the court*' in it's final *Hail Mary*, to once again deprive Plaintiff of property she had legal title to and right of possession.

107.   In *Austin v. Alabama Check Cashers Ass'n,* 936 So. 2d 1014 - Ala: Supreme Court 2005, this court held   F.2d 332, 341-42 (7th Cir.1987) the court held

> "[P]arties who choose to resolve litigation through settlement **may not dispose of the claims of a third party,** and a fortiori may not impose duties or obligations on a third party, without the party's agreement. A court's approval of a consent decree between some of the parties therefore cannot dispose of the valid claims of nonconsenting intervenors. And, of course, a court may 1041*1041 not enter a consent decree that imposes obligations on a party that did not consent decree." ..."

108.   Defendant's argued on June 30, 2017,  that "... [i]n summary, **Ms. Sims admittedly has no legal interest in the Property after deeding it to Ms. Tipp nearly eight (8) years ago**. (Sims depo. at p. 119). Accordingly, there is no justiciable controversy because **Ms. Sims has no standing to challenge JPMC's title to the Property**. Therefore, her request for declaratory judgment is due to be dismissed."(emp)

109.   Defendant's argued "... **Ms. Sims lacks standing** to assert the claim ... because well before filing this case, **she quitclaimed all of her interest in the Property to Ms. Tipp, who is not a party to this action** ..." – a 'jurisdictional defect.'

110.    Plaintiff filed a motion to set aside the order and settlement agreement disposing of her property and on November 14, 2018, the court entered an order denying Plaintiff's motion because "Ms. Tipp is not a party to this action and the Order dismissing this action was filed on July 9, 2018. This Court has no jurisdiction to hear this motion" – a 'jurisdictional defect' that rendered the order void.

111.    In *Newman v. Skypark Properties, LLC,* 266 So. 3d 724 - Ala: Court of Civil Appeals, 2018, "(when a trial court is asked to determine property rights of property owners not before the court, the absent property owners are indispensable parties and any judgment entered in the absence of those parties is void)." The court in *Sims* already determined the "property rights" of Plaintiff and "[u]nder present law **an assignment passes the title to the assignee so that [s]he is the owner of any claim** arising from the chose **and should be treated as the real party in interest under Rule 17(a)**" (*Ex parte Simpson*) Plaintiff wasn't substituted as the "real party in interest."

112.    Ms. Sims's attorney's told Plaintiff, "*we don't need you*" to settle claims on behalf of their client and *Davis v. Burnette,* 341 So. 2d 118 - Ala: Supreme Court 1976, the court held that like in the 2013 case, "Without Mrs. Burnette as a party the trial court did not have the title to the property, which would be affected by a decree, before it. *Morris v. Owens*, 292 Ala. 120*120 159, 290 So.2d 646 (1974) " – "without" Plaintiff, "the trial court did not have the title to the property" and the consent order entered on July 9, 2018, is void for lack of subject-matter juridiction.

113.    In *Flannigan v. Jordan*, 871 So. 2d 767 - Ala: Supreme Court 2003, this court held

> "[t]he question of jurisdiction is always fundamental." *Mobile & Gulf R.R. v. Crocker,* 455 So.2d 829, 831 (Ala.1984). "[I]f there is **an absence of jurisdiction over either the person, or the subject matter, a court has no power to act, and jurisdiction over the subject matter cannot be created by waiver or consent.** *Rinehart, etc. v. Reliance Life Ins. Co. of Georgia*, 272 Ala. 93, 128 So.2d 769*769 503[ (Ala.1961)]. Absence of jurisdiction over the subject matter ends all inquiry, and the matter may be raised on appeal."

114.    All parties in the 2013 case, could not settle those claims without jurisdiction of the subject-matter through a consent order – "subject matter cannot be

created by waiver or consent."

115.   JPMC argued "JPMC is free to settle with whomever it pleases, however it pleases" and Ms. Sims's attorney's argued "we don't need you" to settle those claims on behalf of their client,  but contrary to all the attorney's in that case, the "law of the case" is, neither the attorney's for Ms. Sims or Defendant's had authority to '*wheel and deal*' and dispose of Plaintiff's property like Defendant's wheeled everything that belonged to her parents out the front and back door in wheelbarrow's into dumpster's.

116.   The parties in the 2013 case had no authority to "compromise" and reach a "confidential resolution" of the claims in the complaint regarding the property  because in *Sims*, neither Ms. Sims nor JPMC have any interest in the property and in *Sims*, the court held "**because Sims conveyed any interest that she had in the property** to Tipp via the quitclaim deed, **privity existed between Sims and Tipp** ..."(emp) and Ms. Sims had no claims to the property to settle.

117.   In *Walden v. Es Capital, LLC*, 89 So. 3d 90 - Ala: Supreme Court 2011, not even the trial court is "permitted to reconsider the issue; in fact, it is well settled that a trial court may not issue an order that is in direct contravention of an opinion of this Court : A lower court is without power to modify, alter, amend, set aside or in any manner disturb or depart from the judgment of the reviewing court as to any matter decided on appeal ...."

118.   Judge Graddick did not terminate Plaintiff's legal title and right to possession and neither did the court in *Sims,* but by "joint stipulation" the parties in the 2013 case disposed of Plaintiff's property and her claims "with prejudice."

119.   Plaintiff  received a letter from her former attorney dated June 20, 2017 enclosing Ms. Sims's letter "formally" revoking the power of attorney executed on August 22, 2009 "to handle the litigation with the Bank over the foreclosure. Please do not take any further action on my behalf."   Revoking the power of attorney did not render Plaintiff's title to the property void.

120.   In *Etransmedia Technology, Inc. v. Allscripts Healthcare, LLC,* Dist. Court, ND Illinois, the court held Ms. Sims "formally" revoking the power of attorney "is not the

equivalent of an assignment of ownership. ... it does not purport to transfer title or ownership..." and an "... assignment of a legal claim occurs—depriving the assignor of real-party-in-interest status..."

121.   In *Warner v. Pony Express Courier Corp.*, 675 So. 2d 1317 - Ala: Court of Civil Appeals 1996, the court held

> "... it is always a question of fact whether an attorney has the authority to make a settlement on behalf of his client. ...
>
> "'**[A] judgment entered upon an agreement by the attorney may be set aside on affirmative proof that the attorney had no right to consent to its entry.**'" *Blackwell v. Adams*, 467 So.2d 680, 684-85 (Ala.1985)(quoting *Bradford Exch. v. Trein's Exch.*, 600 F.2d 99, 102 (7th Cir. 1979)). Whether an attorney has the authority to settle a case on behalf of his client is always a question of fact..."

122.   *Collusion* is defined as a "*secret agreement* between two or more parties ... defrauding others of their legal rights." Plaintiff has "title to the property ... title and absolute authority over the property" and refused to forfeit her legal title and right to possession and the attorney's for Ms. Sims nor the Defendant's, had no "authority to make a settlement on behalf of his client" who had no interest in the property.

123.   In *Kearney v. Cavalry Portfolio Services, LLC*, Dist. Court, ED New York 2014, the court held

> "... the valid assignment of a claim is absolute on its face and **the assignor is divested of all control and right to the cause of action, the assignee is the proper party in interest** and has the right to commence and prosecute an action in its own name without joining the assignor as a necessary party").

117.   Ms. Sims and her attorney's usurped control of the "cause of action" to recover possession of Plaintiff's property and settled claims on behalf of Ms. Sims that she had no legal interest in and her attorney's had no "control" over.

118.   Ms. Sims and her attorney's revoked the power of attorney appointing Ms. Tipp as attorney-in-fact and entered into a "*secret agreement*" that Plaintiff, as successor in title, was not "privy"

119.   Defendant's evidenced JPMC had no legal authority over that property and argued on August 4, 2017 that "[Ms. Sims] favorably cited to ... *Gallagher*..."'[**T]he effect**

of a voluntary dismissal ... is to render the proceedings a nullity and leave the parties as if the action had never been brought.'"(emp)

120.   On July 7, 2018, Defendant's and Ms. Sims "stipulated" to settle claims to Plaintiff's property and dismissed her claims and property rights "with prejudice."

121.   On June 19, 2018, JPMC executed a fraudulent quit claim deed in favor of Ms. Sims after JPMC conducted "an unauthorized foreclosure sale" on the property on July 13, 2009 that is void ab initio rendering JPMC's foreclosure deed of record and Ms. Sims's quit claim deed executed on June 19, 2018.

122.   In *Billy Barnes Enterprises, Inc. v. Williams*, 982 So. 2d 494 - Ala: Supreme Court 2007, this court held

> "... A **validly executed settlement agreement** is as binding on the parties as any other contract." Grayson v. Hanson, 843 So.2d 146, 150 (Ala.2002). **However, settlement agreements may be reopened for reasons of fraud,** accident, or mistake. Nero v. Chastang, 358 So.2d 740 (Ala.Civ. 499*499 App.1978); see also Taylor v. Dorough, 547 So.2d 536, 540 (Ala.1989) ("**A release obtained by fraud is void**."); Lowery v. Mutual Loan Soc'y Inc., 202 Ala. 51, 53, 79 So. 389, 391 (1918). ..."

123.   Ms. Sims had no authority to settle claims to the property and was "**divested of all control and right to the cause of action**" and Plaintiff "is entitled to control it and receive its fruit..." (*see Etransmedia*)

124.   All parties in the 2013 case, entered into a "secret agreement" to deprive Ms. Tipp of her property she has legal title to and a right to possess and her proeprty rights were determined as the 'law of the case' in *Sims*. In *Miller & Miller Constr. Co. v. Madewell*, 920 So.2d 571, 572-73 (Ala.Civ.App.2005), the court summed it up finding that

> "... under a judgment entered by this court, the actions of ... counsel and the trial court fly in the face of the "law of the case" doctrine. "[U]nder the `law of the case' doctrine, `whatever is once established between the same parties in the same case continues to be the law of that case, ... *Lary v. Flasch Bus. Consulting*, 909 So.2d 194, 198 (quoting *Blumberg v. Touche Ross & Co.*, 514 So.2d 922, 924 (Ala.1987)."

———————————

## FIRST CLAIM

*Denial of due process of the law.*

125.   Plaintiff incorporates by reference all the preceding paragraphs of this Complaint as if fully set forth herein.

126.   The Fifth and Fourteenth Amendments, prevent an "unjust taking" and demands due process of the law based on prevailing law and statutes.  Plaintiff's due process rights were violated when she was deprived of property by an unappealable order of dismissal where JPMC could not prove legal title and a right to possession.

127.   JPMC voluntarily dismissed it's complaint for the purpose of circumventing the penal effects of the 'door-closing' statute.

128.   Plaintiff was denied due process of the law where the court failed to enforce the voluntary dismissal of JPMC's ejectment action on August 30, 2010, that rendered the proceeding a nullity where Plaintiff acquire legal title and legal possession of the property through the order of dismissal.

129.   Plaintiff was denied due process of the law when she denied the right to proceed pursuant to Rule 17(a) and her claims were barred by "res judicata" when there was no "court of competent jurisdiction" and no order terminating Plaintiff's title to the property and right to possession.

130.   Plaintiff was deprived of property without due process of the law where the Alabama Court of Civil Appeals established Plaintiff's legal title and right to possession but the opinion of the court in *Sims* was "dismissed" by the court based on JPMC's argument  "JPMC is free to settle with whomever it pleases, however it pleases ...  her opinions are of no factual or legal consequence and cannot constitute grounds to second-guess, much less set aside, the settlement."

131.   Plaintiff was deprived of property without due process of the law where the settlement agreement is void on its face for lack of subject-matter jurisdiction and procured by fraud and Plaintiff was denied relief from the void order.

- 34 -

## SECOND CLAIM

*National Bank Act, 12 U.S.C.A. § 1 et seq.,*

132. Plaintiffs incorporate by reference all the preceding paragraphs of this Complaint as if fully set forth herein.

133. The NBA specifically authorizes federally chartered banks to engage in real estate lending, 12 U. S. C. §371, and "[t]o exercise … such incidental powers as shall be necessary to carry on the business of banking," §24 Seventh. Among incidental powers, national banks may conduct certain activities through "operating subsidiaries," discrete entities authorized to engage solely in activities the bank itself could undertake, and subject to the same terms and conditions as the bank. See §24a(g)(3)(A); 12 CFR §5.34(e).

134. JPMC engages in mortgage fraud and fraud on the court and asserted it had "full authority to conduct foreclosures and initiate ejectment proceedings in Alabama" under federal law, contrary to Tipp's assertions."

135. The OCC oversees licensed operating subsidiaries. JPMC, a 'wholly owned subsidiary' of Chase Bank, is not an OCC licensed "operating subsidiary" of Chase Bank and "conducts certain activities" that are not "incidental" to the business of banking that constitute mortgage fraud.

136. Chase Bank, "a federally chartered bank," is in fact engaging in "non-banking" activity and mortgage fraud through an uncontrolled rogue entity that is not regulated by any federal agency or the prevailing laws of this state.

## THIRD CLAIM

(Federal Civil RICO, 18 U.S.C. 3 1962(c))

137. Plaintiff incorporates by reference all the preceding paragraphs of this Complaint as if fully set forth herein.

138. Each Defendant violated 18 U.S.C. 3 1962(c) by the acts described in the prior paragraphs.

139. Each of the Defendant's engaged in the conducted their affairs through a

continuing pattern of racketeering activity.

140. Each of the Defendant's have falsely asserted ownership of the mortgage at issue through the state courts and/or bankruptcy court.

141. Defendant's, JPMC, Chase Bank and Chase Home, asserted in 2011 that "Ms. Sims's Mortgage was subsequently assigned from Ameriquest to WM Specialty Mortgage, LLC, a subsidiary of Washington Mutual Bank ("WaMu") on November 30, 2007 ... On September 25, 2008, ... the FDIC sold certain assets of WaMu, which included Ms. Sims's **Mortgage and Note, to JPMorgan** ..."

142. Defendant Chase Home asserted claims to the bankruptcy court that on December 26, 2008 and April 20, 2009, that Chase Home was the owner of the mortgage and "Deed of Trust" it acquired from Citi-Residential.

142. On July 13, 2009, JPMC foreclosed on the mortgage claiming to be the assignee of Ms. Sims's mortgage.

143. Defendant's records evidence that at the time of the known false statements to deprive Plaintiff of her property and due process of the law, Ms. Sims's mortgage was assigned in blank and the note was endorsed in blank and transmitted to Bankers Trust.

144. Defendant's have engaged in a pattern of rackettering activity and criminal activity to willfully and unlawfully deprive Plaintiff recovery of property she had legal title to and legal possession of.

145. JPMC circumvented the penal purpose of the 'door-closing' statute by filing a fraudulent motion to voluntarily dismissed the ejectment action.

146. JPMC violated a court order entered on August 30, 2010 when Defendant's went onto Plaintiff's property, with signs posted, and by forcible entry and trespass, conducted an unauthorized 'trash out' on Plaintiff's property and rekeyed the locks and locked Plaintiff out of her house that she had legal title to and legal possession of.

147. Defendant's seized and unlawfully detained Plaintiff's property and caused Plaintiff's property permanent structural damage where the interior BPO went from $104,000 to $0.00. Defendant's negligently maintained the house where roof leaks caused black mold, rain rot and the ceilings to fall in.

148.   Defendant's have engaged in a pattern of rackettering activity willfully and unlawfully to deprive Plaintiff recovery of property she had legal title to and legal possession of when Defendant's conspired to settle claims to Plaintiff's property in a *"secret agreement"* with Plaintiff's *predecessor in title* in direct contravention of the opinion of the court in *Sims*, where the court found "because Sims conveyed any interest that she had in the property to Tipp via the quitclaim deed, privity existed between Sims and Tipp" and contrary to prevailing law.

149.   Plaintiff, *successor in title* and the legal title holder of the property with the right of possession, was not notified of the settlement on her property, made a party to the *"secret agreement"* and was not "privy" to the terms of the *"secret agreement"* unlawfully disposing of her claims and her property.

150.   JPMC    conveyed Plaintiff's property to the *predecessor in title* by a fraudulent quit claim deed slandering Plaintiff's title where JPMC had no legal title through the foreclosure sale.

151.   Defendant's have engaged in a pattern of rackettering activity willfully and unlawfully to deprive Plaintiff's recovery of property she had legal title to and the right of possession by "maintaining" the same "cause of action" that was dismissed and not re-filed and contrary to the courts opinion in *Sims.*

152.   The acts of racketeering were not isolated, but rather the acts of Defendants were related in that they had the same or similar purpose and result, participants, victims and method of commission. Further, the acts of racketeering by Defendants have been continuous. There was repeated conduct during a period of time beginning in 2009 and continuing to the present, and there is a continued threat of repetition of such conduct by Defendant's to bar Plaintiff's recovery of her property she has legal title to and the right of possession.

153.   The racketeering activity of Defendant's constitute a criminal enterprise for the purpose of engaging in mortgage fraud, bank fraud, forgery, forcible entry and trespass.

154.   JPMC,   Chase  and Chase Home conspired to violate RICO § 1962(a)

## FOURTH CLAIM

### *Common Law Fraud and Conspiracy Fraud and Collusion*

155.   Plaintiff incorporates by reference all the preceding paragraphs of this Complaint as if fully set forth herein.

156.   JPMC made known false statements of fact contained in the foreclosure deed and ejectment action that JPMC was the "assignee" of Ms. Sims's mortgage.

157.   Defendant's submitted to the court in 2011 a foreclosure deed that was not before the court in the 2009 ejectment action for the purpose of depriving Plaintiff of her property by establishing "superior" legal title.

158.   JPMC executed and caused to be filed of record a fraudulent quit claim deed conveying Plaintiff's property to the predecessor in title.

## FOURTH CLAIM

### *Trespass  is a wrong to the right of possession*

159.   Plaintiff incorporates by reference all the preceding paragraphs of this Complaint as if fully set forth herein.

160.   **"A trespass to property is <u>a wrong against the right of possession</u> or entry."** *Boyce v. Cassese,* 941 So.2d 932, 945 (Ala.2006). In order to be actionable, the entry on the land of another must not be authorized; … **Trespass to chattel occurs when "there is a "wrongful taking and carrying away of the property of another".""** *Wint v. Alabama Eye & Tissue Bank*, 675 So. 2d 383, 385 (Ala. 1996)." (*Tennant v. Chase Home Finance, LLC,* , 187 So. 3d 1172 - Ala: Court of Civil Appeals 2015,)

161.   Defendant's records evidence that in December, Defendant's rekey the locks on the doors of Plaintiff's house and authorized a 'trash out' of the personal property of Plaintiff's parents. On December 2, 2010, Defendant's "… rekeyed … if we go to **PP eviction** I believe **we will be on hold for the affidavit issues**"(emp) "… **We will move forward as a Vacant property** and … **remove all remaining items left behind**… **trash out**

**per evictions** coordinator ..."(emp)

162.   On December 11, 2010, without the right of possession or the right of entry, Defendant's went onto Plaintiff's property in violation of a court order and signs posted by Plaintiff, and, by forcible entry and trespass, took unlawful possession of Plaintiff's property as part of a continuing pattern of criminal activity.

163.   On July 7, 2010, Defendant's "stipulated" to the disposal of Plaintiff's property through a "secret agreement" in a pattern and practice of a wrong against Plaintiff's right of possession.

164.   Defendant's have willfully, with malice and forethought, engaged in activity to bar Plaintiff's "right of possession" of her property she had legal title to and legal possession of.

165.   There is "....[N]o period of limitation at all is applicable to an action for a declaratory judgment ... in cases involving a continuing harm ... the same constitutes at least **the equivalent of a <u>continuing invasion of plaintiff's property rights akin to a continuing trespass</u>** – a situation in which a new cause of action arises in plaintiff's favor ... each day (id. At 254; *see Dowsey v. Village of Kensington*, 257 N.Y. 221, 228, 177 N.E. 427 [1931])."(emp) (*Breland v. City of Fairhope*, 229 So. 3d 1078 Ala: Supreme Court 2016)

## <u>FIFTH CLAIM</u>

*Section 10-2B-15.02, Ala.Code 1975,*

166.   Plaintiff incorporates by reference all the preceding paragraphs of this Complaint as if fully set forth herein.

167.   JPMC, an unqualified foreign corporation, and "[t]he law of this state is that a foreign corporation which has not qualified to do business in Alabama ... cannot use Alabama courts to enforce that contract ... " and JPMC's claims are barred in state and federal court. (*Sanjay, Inc. v. Duncan Const. Co., Inc.* , 445 So. 2d 876 – Ala: Supreme Court 1983)

168.   In *Dept. Of Environmental Management v. Leaf,* 973 So. 2d 369 Ala: Court

of Civil Appeal 2007, the court held that "when "the language of a statute is plain and unambiguous ... courts must enforce the statute as written ..." JPMC cannot maintain an action in any court in this state to bar Plaintiff's recovery of her property.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court:

A.     Render the foreclosure sale on Plaintiff's property invalid and the foreclosure deed declared void;

B.     Render the *secret agreement* entered into by all parties in the 2013 case depriving Plaintiff of  property she has legal title to and a right to possession, void as procured by fraud and collusion by all parties;

C.     Permanently enjoin JPMC Specialty Mortgage, LLC, a wholly owned subsidiary of Chase Bank,  from doing business in Alabama.  JPMC has not complied with the laws of this state to do business, and is not authorized by the OCC as a 'licensed operating subsidiary of Chase Bank.  Chase Bank is conducting 'non-banking' activity through a rogue subsidiary uncontrolled by the rule of law or any  federal agency.

D.     Declare Plaintiff the lawful owner of the property located at 11101 Ben Hamilton Road, Grand Bay,Alabama,  36541.

E.     Award compensatory, consequential, exemplary and punitive damages to Plaintiff in an amount to be determined.

F.     Grant to Plaintiff whatever other relief is just and proper.

Respectfully submitted,

*Marian S.A. Tipp*

Marian S. A. Tipp, *pro se*

This the 12th day of June, 2020

- 40 -

DEFENDANT'S  SERVED AS FOLLOWS BY CERTIFIED MAIL"

JPMC SPECIALTY MORTGAGE, LLC
The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE  19801

CHASE HOME FINANCE, LLC.
The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE  19801

JPMORGAN CHASE BANK, N.A.
James Dimon
President & Chief Executive Officer
9900 Katy Freeway
Houston, TX  77055


Marian S. A. Tipp, pro se
5909 Couton Drive
Mobile, Alabama 36693

# EXHIBIT "A"

ELECTRONICALLY FILED
7/24/2009 11:11 AM
CV-2009-901393.00
CIRCUIT COURT OF
MOBILE COUNTY, ALABAMA
JOJO SCHWARZAUER, CLERK

## IN THE CIRCUIT COURT OF MOBILE COUNTY, ALABAMA

| | |
|---|---|
| JPMC SPECIALTY MORTGAGE, LLC<br>F/K/A WM SPECIALTY MORTGAGE, LLC, | * <br> * <br> * |
| Plaintiff, | * <br> * |
| VS. | *    CASE NO.<br> * <br> *    CV 2009- |
| CAROLYN E. SIMS, | * <br> * |
| Defendant. | * <br> * |

### COMPLAINT

COMES NOW the Plaintiff in the above-styled cause and represents unto this Honorable Court as follows:

1. Plaintiff, JPMC Specialty Mortgage, LLC f/k/a WM Specialty Mortgage, LLC, is qualified to do business in Alabama and doing business in Mobile County, Alabama.

2. Defendant, Carolyn E. Sims, is over the age of 19 years and is a resident citizen of Mobile County, Alabama.

3. Plaintiff avers that by virtue of foreclosure on July 13, 2009, of that certain Mortgage originally between Carolyn E. Sims and Ameriquest Mortgage Company, said mortgage having subsequently been transferred and assigned to WM Specialty Mortgage, LLC JPMC Specialty Mortgage, LLC f/k/a WM Specialty Mortgage, LLC is the owner of the following-described real property located and situated in Mobile County, Alabama, to wit:

Commencing at the southeast corner of the north half of the southwest quarter of Section 32, Township 5 South, Range 3 West, Mobile County, Alabama. thence run North 90 degrees 00 minutes West a distance of 1440.19 feet to a 1-1/2 inch open top pipe; thence run south 89 degrees 48 minutes 41 seconds west a distance of 236.63 feet to a capped rebar (PLS 20364) at the point of beginning of the following described parcel; thence continue south 89 degrees 48 minutes 41 seconds west a distance of 307.53 feet to a capped rebar (SPEAKES) at the Southeast corner of Westbroom Winds, as recorded in Map Book 67, Page 98 of the records in the Office of the Judge of Probate, Mobile County, Alabama, thence run North 05 degrees 18 minutes 27 seconds east and along the east line of said Westbroom Winds a distance of 691.94 feet to a capped rebar (SPEAKES) on the south right-of-way line of Ben Hamilton Road (80 foot R/W); thence run eastwardly and along said south right-of-way line and along the arc of a curve to the left (having a Delta of 01 degrees 04 minutes 54 seconds, a radius of 8,498.50 feet, a chord length of 160.44 feet, and a chord bearing of north 83 degrees 44 minutes 48 seconds east) a distance of 160.44 feet to a capped rebar (PLS 20364); thence run south 06 degrees 47 minutes 39 seconds east a distance of 710.43 feet to the point of beginning

Also known as **11101 Ben Hamilton Raod, Grand Bay, AL 36541**

DOCUMENT 2

However in the event of a discrepancy between the legal description and street address, the legal description shall control.

A copy of the Foreclosure Deed is attached hereto, incorporated by reference and designated as Exhibit "A".

4.   Plaintiff avers that on or about July 13, 2009, Plaintiff served or caused to be served upon the Defendant written Demand for Possession of the subject real property pursuant to Section 6-5-251 Code of Alabama (1975).  A copy of the aforesaid written Demand for Possession is attached hereto, incorporated by reference and designated as Exhibit "B".

5.   Plaintiff avers that Defendant has lost her right to redeem the property.

6.   Plaintiff avers that Defendant has failed and refused to vacate the aforesaid property despite Plaintiff's demands to do so.

WHEREFORE, PREMISES CONSIDERED Plaintiff demands possession of the aforesaid real property, together with money damages for the wrongful retention of said real property and an order that the Defendant has forfeited her right to redemption for failing to vacate the property plus such other, further and different relief Plaintiff is entitled under these premises and costs of court.

/s/ Greggory M. Deitsch
Greggory M. Deitsch (DEI001)
Attorney for Plaintiff
2311 Highland Avenue South
P.O. Box 55727
Birmingham, Alabama 35255
205.930.5225
Fax:  205.930.5101
E-Mail:  gdeitsch@sirote.com

OF COUNSEL:
SIROTE & PERMUTT, P.C.

PLAINTIFF'S ADDRESS:
c/o Sirote & Permutt, P.C.

DEFENDANT'S ADDRESS:
Carolyn E. Sims
11101 Ben Hamilton Raod
Grand Bay, AL  36541

SEND TAX NOTICE TO:
Chase Home Finance, LLC
3415 Vision Drive
Columbus, OH 43219

CM #:   43358-555

STATE OF ALABAMA                    )

COUNTY OF MOBILE                    )

<u>FORECLOSURE DEED</u>

KNOW ALL MEN BY THESE PRESENTS, that

WHEREAS, heretofore, on, to-wit: the 13th day of November, 2002, Carolyn E. Sims, executed that certain mortgage on real property hereinafter described to Ameriquest Mortgage Company, which said mortgage was recorded in the Office of the Judge of Probate of Mobile County, Alabama, in Book: 5271; Page: 0826, said mortgage having subsequently been transferred and assigned to WM Specialty Mortgage, LLC , by instrument recorded in Book 6304, Page 698, in the aforesaid Probate Office ("Transferee"); and

WHEREAS, in and by said mortgage, the Transferee was authorized and empowered in case of default in the payment of the indebtedness secured thereby, according to the terms thereof, to sell said property before the Courthouse door in the City of Mobile, Mobile County, Alabama, after giving notice of the time, place, and terms of said sale in some newspaper published in said County by publication once a week for three (3) consecutive weeks prior to said sale at public outcry for cash, to the highest bidder, and said mortgage provided that in case of sale under the power and authority contained in same, the Transferee or any person conducting said sale for the Transferee was authorized to execute title to the purchaser at said sale; and it was further provided in and by said mortgage that the Transferee may bid at the sale and purchase said property if the highest bidder thereof; and

WHEREAS, default was made in the payment of the indebtedness secured by said mortgage, and the said JPMC Specialty Mortgage, LLC f/k/a  WM Specialty Mortgage, LLC did declare all of the indebtedness secured by said mortgage, subject to foreclosure as therein provided and did give due and proper notice of the foreclosure of said mortgage by publication in the <u>Mobile Press-Register</u>, a newspaper of general circulation published in Mobile County, Alabama, in its issues of June 6, 2009, June 13, 2009, and June 20, 2009; and

WHEREAS, on July 13, 2009, the day on which the foreclosure was due to be held under the terms of said notice, between the legal hours of sale, said foreclosure was duly conducted, and JPMC Specialty Mortgage, LLC

f/k/a WM Specialty Mortgage, LLC did offer for sale and sell at public outcry in front of the Courthouse door in

Mobile, Mobile County, Alabama, the property hereinafter described; and

      WHEREAS, Amy Barbour was the auctioneer who conducted said foreclosure sale and was the person

conducting the sale for the said JPMC Specialty Mortgage, LLC f/k/a  WM Specialty Mortgage, LLC; and

      WHEREAS, JPMC Specialty Mortgage, LLC f/k/a  WM Specialty Mortgage, LLC , was the highest bidder

and best bidder in the amount of Fifty Thousand And 00/100 Dollars ($50,000.00) on the indebtedness secured by

said mortgage, the said JPMC Specialty Mortgage, LLC f/k/a WM Specialty Mortgage, LLC, by and through Amy

Barbour as auctioneer conducting said sale and as attorney-in-fact for said Transferee, does hereby grant, bargain,

sell  and convey unto JPMC Specialty Mortgage, LLC f/k/a  WM Specialty Mortgage, LLC , all of its right, title,

and interest in and to the following described property situated in Mobile County, Alabama, to-wit:

> Commencing at the southeast corner of the north half of the southwest quarter of Section 32, Township 5 South, Range 3 West, Mobile County, Alabama. thence run North 90 degrees  00 minutes West a distance of 1440.19 feet to a 1-1/2 inch open top pipe; thence run south 89 degrees 48 minutes 41 seconds west a distance of 236.63 feet to a capped rebar (PLS 20364) at the point of beginning of the following described parcel; thence continue south 89 degrees 48 minutes 41 seconds west a distance of 307.53 feet to a capped rebar (SPEAKES) at the Southeast corner of Westbroom Winds, as recorded in Map Book 67, Page 98 of the records in the Office of the Judge of Probate, Mobile County, Alabama, thence run North 05 degrees 18 minutes 27 seconds east and along the east line of said Westbroom Winds a distance of 691.94 feet to a capped rebar (SPEAKES) on the south right-of-way line of Ben Hamilton Road (80 foot R/W); thence run eastwardly and along said south right-of-way line and along the arc of a curve to the left (having a Delta of 01 degrees 04 minutes 54 seconds, a radius of 8,498.50 feet, a chord length of 160.44 feet, and a chord bearing of north 83 degrees 44 minutes 48 seconds east) a distance of 160.44 feet to a capped rebar (PLS 20364); thence run south 06 degrees 47 minutes 39 seconds east a distance of 710.43 feet to the point of beginning

      TO HAVE AND TO HOLD the above described property unto JPMC Specialty Mortgage, LLC f/k/a  WM

Specialty Mortgage, LLC  its successors/heirs and assigns, forever; subject, however, to the statutory rights of

redemption from said foreclosure sale on the part of those entitled to redeem as provided by the laws in the State of

Alabama; and also subject to all recorded mortgages, encumbrances, recorded or unrecorded easements, liens, taxes,

assessments, rights-of-way, and other matters of record in the aforesaid Probate Office.

      IN WITNESS WHEREOF, JPMC Specialty Mortgage, LLC f/k/a WM Specialty Mortgage, LLC, has

caused this instrument to be executed by and through Amy Barbour, as auctioneer conducting said sale and as

attorney-in-fact for said Transferee, and said Amy Barbour, as said auctioneer and attorney-in-fact for said

Transferee, has hereto set his/her hand and seal on this July 13, 2009.

JPMC Specialty Mortgage, LLC f/k/a  WM Specialty
Mortgage, LLC
By: _____
Amy Barbour, Auctioneer and Attorney-in-Fact


STATE OF ALABAMA                     )

COUNTY OF _____          )

   I, the undersigned, a Notary Public in and for said County, in said State, hereby certify that Amy Barbour, whose name as auctioneer and attorney-in-fact for JPMC Specialty Mortgage, LLC f/k/a WM Specialty Mortgage, LLC, is signed to the foregoing conveyance, and who is known to me, acknowledged before me on this date, that being informed of the contents of the conveyance, he/she, as such  auctioneer and attorney-in-fact  and with full authority, executed the same voluntarily on the day the same bears date for and as the act of said Transferee.

   Given under my hand and official seal on this July 13, 2009.


                                        _____
                                        Notary Public
                                        My Commission Expires: _____


This instrument prepared by:
Colleen McCullough
SIROTE & PERMUTT, P.C.
P. O. Box 55727
Birmingham, Alabama  35255-5727

**COLLEEN MCCULLOUGH**
ATTORNEY AT LAW

# SIROTE
## &
# PERMUTT
### A PROFESSIONAL CORPORATION

July 13, 2009

**VIA CERTIFIED MAIL – 7008 0150 0002 9469 3730**
**RETURN RECEIPT REQUESTED**
**AND U.S. MAIL**

Carolyn E. Sims
11101 Ben Hamilton Rd.
Grand Bay, AL 36541

## DEMAND FOR POSSESSION

     YOU ARE HEREBY NOTIFIED that, on July 13, 2009, the mortgage loan in favor of JPMC **Specialty Mortgage, LLC f/k/a WM Specialty Mortgage, LLC**, secured by real estate located at **11101 Ben Hamilton Rd., Grand Bay, AL 36541**, was duly foreclosed in accordance with the Power of Sale contained therein.

     Your attention is respectfully directed to Section 6-5-251, <u>Code of Alabama</u> (1975), which reads as follows:

<u>Delivery of Possession to Purchaser on Demand.</u>

     (a)    The possession of the land must be delivered to the purchaser by the debtor, if in his possession or in the possession of anyone holding under him by privity of title, within ten (10) days after written demand for the possession has been made by the purchaser, vendee, or his agent.

     (b)    If the land is in the possession of a tenant, written notice must be given to the debtor, unless he is a non-resident, and the debtor must direct the tenant to deliver possession or recognize the purchaser as his landlord in the event the lease antedates the mortgage, judgment or levy. If the debtor is a non-resident or cannot be found, notice to the tenant is sufficient, and he must deliver possession within ten (10) days.

     (c)    FAILURE OF THE DEBTOR OR ANYONE HOLDING UNDER HIM TO COMPLY WITH THE PROVISIONS OF THIS SECTION FORFEITS THE RIGHT OF REDEMPTION.

     In accordance with, and pursuant to, the statute set forth above, **written demand is hereby made upon you to deliver possession of the above-described property within ten (10) days. Unless possession is delivered within ten (10) days as set forth herein, the debtor(s)' right of redemption will be forfeited.**

     The property described in the mortgage was purchased at the foreclosure sale on July 13, 2009, by JPMC Specialty Mortgage, LLC f/k/a WM Specialty Mortgage, LLC, and, on behalf of the purchaser,

*LAW OFFICES AND MEDIATION CENTERS*
2311 HIGHLAND AVENUE SOUTH    BIRMINGHAM, ALABAMA 35205
POST OFFICE BOX 55727    BIRMINGHAM, ALABAMA 35255-5727
URL  |  *http://www.sirote.com*

B i r m i n g h a m   |   H u n t s v i l l e   |   M o b i l e

DOCUMENT 2

JPMC Specialty Mortgage, LLC f/k/a WM Specialty Mortgage, LLC, **demand is hereby made upon you to immediately vacate and deliver possession of the said real estate within ten (10) days. In the event you do not surrender possession of the real estate within ten (10) days, the purchaser, JPMC Specialty Mortgage, LLC f/k/a WM Specialty Mortgage, LLC , will have no alternative other than to file an ejectment suit in the Circuit Court to recover possession of the subject property.**

This communication is from a debt collector.  If you have any questions in regard to this matter, please feel free to contact me or Stacey Lowery at (205) 930-5289.

DATED THIS 13TH DAY OF JULY, 2009.

FOR:   JPMC Specialty Mortgage, LLC f/k/a WM Specialty Mortgage, LLC

BY:    *Colleen McCullough*
       Colleen McCullough
       ATTORNEY FOR THE PURCHASER

CM/lb

cc:   Chase Home Finance, LLC/Loan #40349607
      William J. Casey, Esq.

### CERTIFICATE OF SERVICE

EXECUTED BY MAILING THE ABOVE **DEMAND FOR POSSESSION** TO THE ABOVE-NAMED PERSON(S) BY U.S. MAIL, CERTIFIED, RETURN RECEIPT REQUESTED, <u>AND</u> BY REGULAR MAIL, ON THIS THE 13th DAY OF July, 2009.

BY:    *Colleen McCullough*
       Colleen McCullough
       ATTORNEY FOR THE PURCHASER

# EXHIBIT "B"

**Beth Chapman**
Secretary of State

P.O. Box 5616
Montgomery, AL 36103-5616

# STATE OF ALABAMA

I, Beth Chapman, Secretary of State of the State of Alabama, having custody
of the Great and Principal Seal of said State, do hereby certify that

after a diligent search of the alphabetical corporate records
on file in this office, consisting of domestic and foreign
corporations, profit and non-profit, domestic and foreign
limited partnerships, domestic and foreign limited liability
companies and domestic and foreign limited liability
partnerships no record is found to exist of any entity by the
name:

### JPMC Specialty Mortgage LLC

I further certify that this is the office having legal
custody of such records.



In Testimony Whereof, I have hereunto set my hand
and affixed the Great Seal of the State, at the Capitol,
in the City of Montgomery, on this day.

10/09/09

**Date**

_Beth Chapman_

**Beth Chapman**                                            **Secretary of State**

# EXHIBIT "C"

ELECTRONICALLY FILED
8/30/2010 8:02 AM
CV-2009-901393.00
CIRCUIT COURT OF
MOBILE COUNTY, ALABAMA
JOJO SCHWARZAUER, CLERK

## IN THE CIRCUIT COURT OF MOBILE COUNTY, ALABAMA

| | | |
|---|---|---|
| JPMC SPECIALTY MORTGAGE, LLC | ) | |
| F/K/A WM SPECIALTY, | | |
| Plaintiffs, | ) | |
| | ) | |
| V. | ) | Case No.: CV-2009-901393.00 |
| | ) | |
| SIMS CAROLYN E., | ) | |
| Defendants. | ) | |

### ORDER

PLAINTIFF'S MOTION TO DISMISS filed by JPMC SPECIALTY MORTGAGE, LLC F/K/A WM SPECIALTY is hereby GRANTED.

**DONE this 30th day of August, 2010.**

/s CHARLES A GRADDICK
**CIRCUIT JUDGE**

# EXHIBIT "D"

874/0040349607/SR002/1/1/0000000000000

December 26, 2008

JOHN C. MCALEER, III
CHAPTER 13 TRUSTEE
P.O. BOX 1884
MOBILE, AL 36633-

Re:  Loan Number:  0040349607
     New Servicer Loan Number:   000000000040349607
     Borrower(s): Carolyn E Sims
     Property: 11101 Ben Hamiliton Rd, Grand Bay AL 36541

Dear Sir/Madam:

Please be advised that Citi Residential Lending sold the
above Real Estate Secured Loan to CHASE HOME FINANCE LLC.

Servicing of the same will be transferred effective January 1, 2009.

          CHASE HOME FINANCE LLC
          1820 E SKY HRBOR CR SOUTH
          ATTN: BOX 78116
          PHOENIX,AZ 85034

Please update your disbursement records to reflect this change.

Sincerely,

Service Release Department

SR002/005/CPI

JPMC 000448

# EXHIBIT "E"

Chase Home Finance LLC (CA2-0824)
PO BOX 509011
San Diego, CA 92150-9011





April 20, 2009

Ilıllıllıllıllıllıllıllıllıllıllıllıldlıllıllıllıllıllılldlıl
000804 01 of 01 NSP0VYG - ZA 00000000000
JOHN C MCALEER III
PO BOX 1884
MOBILE, AL 36633 1884

**ARM Payment Change**
Chase Home Finance LLC Account:  0040349607
Bankruptcy Case Number:  08-10003 MAH
Borrower(s): Carolyn E Sims (the "Borrower(s)")
Property Address:  11101 Ben Hamiliton Rd
                   Grand Bay AL 36541 (the "Property")

Dear Trustee:

Chase Home Finance LLC holds a Deed of Trust on the Property owned by
the above-referenced Borrower(s), and per the Borrower's confirmed plan
you are the disbursing agent for the post-petition (ongoing) mortgage
payments.

We are writing to inform you that the Borrower's P&I payment will be
changing to $.00, effective January, 2008.  The current monthly
escrow amount is $ 251.41; therefore, the total new payment amount
will be $.

Pursuant to federal law, a payment change notice has been sent to the
Borrower(s) for informational purposes only, and not as an attempt to
impose personal liability for the debt.

Payments should be sent to:

        Chase Home Finance LLC
        Mail Code OH4-7142
        3415 Vision Drive
        Columbus, OH 43219-6009

If you have any questions, please call us at the number below.

Sincerely,
Bankruptcy Department
Chase Home Finance LLC
(866) 265-6459 Ext. 52188
(800) 582-0542 TDD / Text Telephone

# EXHIBIT "F"

DOCUMENT 58

## Ameriquest Mortgage Company

### LETTER OF TRANSMITTAL
### B COLLATERAL

Date: 11/22/2002
Loan Number: ▊▊9607 – 5672

To: Bankers Trust Company of California
National Association
1761 E. Saint Andrew Place
Santa Ana, CA 92705

Attn: Ms. Amee Kemmeter
Mortgage Loan Delivery

From: Ameriquest Mortgage Company
1100 Town & Country Road
Orange, CA 92868

**MARIO TEAL**

Borrower(s): CAROLYN E SIMS

Pursuant to the Custody Agreement dated June 30, 2000 between Ameriquest Mortgage Company ("the Company") and Bankers Trust Company of California , National Association, as Agent and as custodian (the "Agent"), the Company herein delivers to you the following documents.

The following is a checklist that lists the materials for transmittal in brief fashion: it is not intended to describe fully all the required characteristics of each item. Each of the required documents for this Mortgage Loan is enclosed in its own separate folder, in the same order as they are listed below:

[ X ] (This) Letter of Transmittal (original and one copy)
[ X ] Original Note (endorsed [ X ] in blank or [    ] as otherwise instructed)
[    ] Assumption Agreement (check block and enclose if applicable)
[    ] Power of Attorney (check block and enclose if applicable)
[    ] Buy-Down Agreement (check block and enclose if applicable)
[ X ] Mortgage, Deed of Trust, Security Deed, or other Security Instrument
[    ] Original, or
[ X ] Conformed Copy
[ X ] Assignment of Mortgage or Deed of Trust assigned [ X ] in blank or [    ] as otherwise instructed:
[ X ] Original, or
[    ] Conformed Copy/ Intervening Assign
[    ] Conformed Copy/ in blank

[ X ] Lender's Title Insurance
[ X ] Original, or
[ X ] Conformed Copy/ of:
[    ] Title Insurance policy, or
[ X ] Written commitment issued by the Title Insurance Company as instructed, or
[    ] Preliminary Title Report

[    ] Appraisal Report
[    ] Original, or
[    ] Conformed Copy

[    ] Other Documents: _____

For each document for which the "Conformed Copy" block is checked, I, the undersigned authorized officer of Ameriquest Mortgage Company , hereby certify to you that the enclosed copy of such document is a true and correct copy of the original, and that (except for the Appraisal) the original has been sent for filing, recording, or registration by the appropriate Governmental Authority for filing of such documents to give proper notice to the public in accordance with the relevant recording statutes of the jurisdiction in which the property covered by such instrument is located. If the Conformed Copy block is checked for the Appraisal report, I certify to you that the original is in the Company's possession and will be held with all other papers now or hereafter held by the Company for this Mortgage Loan IN TRUST for you for the benefit of the Lenders.

Ameriquest Mortgage Company

By: _John P. Graven_
Agent
11/22/2002

(714)541-9980

TRANS (Rev. 6/00)

JPMC 000344

AND WHEN RECORDED MAIL TO
   Ameriquest Mortgage Company
   P.O. Box 11507
   Santa Ana, CA 92711

Loan Number:  0040349607 - 5672

Prepared by:   Ameriquest Mortgage Company

Address:   1100 Town & Country Road   Orange, CA 92868

## ASSIGNMENT OF MORTGAGE

STATE OF ALABAMA

WITNESSETH:  For VALUABLE CONSIDERATION, receipt of which is hereby acknowledge,
   Ameriquest Mortgage Company

hereby sells, assigns, transfers, and sets over a certain mortgage, relating to the property legally
described as

   "LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF"

from   CAROLYN E SIMS

dated  11/13/02  , of record in Mortgage Fiche    , Frame    ,
in the Office of the Probate Judge of    MOBILE   County, Alabama, to

                                     (hereinafter referred to as "Assignee")
together with all its right, title, and interest in and to the land described in said mortgage, with
recourse, it being understood that the note secured by said mortgage has been assigned and
transferred to said Assignee, on  11/22/2002   .

                                     Ameriquest Mortgage Company

                                     GINA GERWIG - AGENT

State of  California
County of  ORANGE

On  11/22/2002  before me,  J. ELKHOLY
personally appeared  GINA GERWIG

personally known to me (or proved to me on the basis of satisfactory evidence) to be the
person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that
he/she/they executed the same in his/her/their authorized capacity(ies), and that  by his/her/their
signature(s) on the instrument the person(s) or the entity upon behalf of which is the person(s)
acted,  executed the instrument.

                                     WITNESS my hand and official seal

J. ELKHOLY                           J. ELKHOLY                    (Seal)
Commission # 1353527
Notary Public - California
Orange County
My Comm. Expires Apr 25, 2006

700-AL (Rev. 11/98)