IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| MARIAN S. A. TIPP,<br>    Plaintiff,<br><br>v.<br><br>JPMC SPECIALTY MORTGAGE,<br>LLC, JP MORGAN CHASE BANK,<br>N.A., and CHASE HOME FINANCE,<br>LLC,<br>    Defendants. | )<br>)<br>)<br>) CIVIL ACTION NO. 1:20-00317-TFM-N<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## REPORT AND RECOMMENDATIONS

This action is before the Court on Defendants JPMC Specialty Mortgage LLC ("JPMC"), JPMorgan Chase Bank, N.A. ("Chase"), and Chase Home Finance, LLC's (collectively, "Defendants' ") Motion for Summary Judgment (Doc. 12)[1] and Motion for Rule 11 Sanctions (Doc. 15). *Pro se* Plaintiff Marian S.A. Tipp ("Tipp") filed a response to the motion for summary judgment (Doc. 22) to which Defendant filed a reply (Doc. 27). The pending motion for sanctions has not yet been briefed.[2] The Court referred both motions to the undersigned Magistrate Judge for appropriate action under 28 U.S.C. § 636(a)–(b), Federal Rule of Civil Procedure 72, and S.D. Ala. GenLR

---

[1] As discussed *infa*, Section II, although Defendants' motion is styled as one for summary judgment, the undersigned is construing the motion as a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction.

[2] In the Court's order staying discovery until Defendants' motion for summary judgment is resolved, the Court also stayed briefing on Defendants' motion for Rule 11 sanctions. (Doc. 20, PageID.1195). As discussed *infra*, Section II.C., the motion for Rule 11 sanctions will be briefed and set for a hearing by separate order.

72(a). *See* S.D. Ala. GenLR 72(b); (8/14/2020 electronic referral). Upon consideration, the undersigned **RECOMMENDS** that the Defendants' motion (Doc. 12) be **GRANTED**.

## I. Background

Tipp filed the present suit in federal court on June 12, 2020. (Doc. 1). Defendants filed an answer. (Doc. 7). Tipp filed a motion to strike Defendants' answer. (Doc. 11). Defendants then filed a motion for summary judgment (Doc. 12) with attached exhibits (Doc. 14), to which Tipp responded with motions to strike both the motion (Doc. 25) and the exhibits. (Doc. 24). Tipp's motion to strike Defendant's motion for summary judgment also serves as her response. (*See* Doc. 25, PageID.1266).

The complaint alleges, in sum, that Defendants (1) denied Tipp due process through use of the judicial system; (2) violated the National Bank Act by committing fraud; (3) violated the civil provisions of RICO Act (18 U.S.C. § 1962); (4) committed common law fraud; (5) committed trespass; and (6) improperly used the state courts to execute foreclosure proceedings as an unregistered foreign corporation. (Doc. 1, PageID.34–40).

A. Factual Background

In 2009, JPMC executed a foreclosure sale on a property owned by Tipp's sister, Carolyn Sims. (Doc. 1, PageID.1). JPMC was the highest bidder at this sale, and a foreclosure deed was executed in its favor. (Doc.14-2). JPMC then served Ms. Sims

with a demand for possession notifying her of the sale and demanding that she relinquish the property within a set time. (Doc. 14-12). Upon her refusal, JPMC filed an ejectment action against her in the Circuit Court of Mobile County in 2009 (Doc. 14-1).

One month after the foreclosure sale, Ms. Sims executed a quitclaim deed purporting to convey Tipp the recently foreclosed property subject to the foreclosure deed. (Doc. 1, PageID.1). Several months later, Tipp (with the benefit of counsel) attempted to intervene in JPMC's ejectment action against Ms. Sims, asserting the following claims against the company: wrongful foreclosure, slander of title, trespass, and trespass to chattels. (Doc. 14-5). In response, JPMC filed a motion to dismiss (Doc. 14-6), which was subsequently granted by the court (Doc. 14-9). Tipp did not appeal this ruling. (Doc. 13, PageID.397). Before JPMC's ejectment action against Ms. Sims could be resolved on the merits, JPMC learned that the property was vacant and voluntarily dismissed the then-mooted ejectment action. (*See* Docs. 14-10, 14-11).

In 2011, Tipp (represented by the same counsel as the 2009 case) filed an action in the Circuit Court of Mobile County asserting the following claims against Defendants: wrongful foreclosure, slander of title, trespass, trespass to chattels, and fraud on the court. (Doc. 14-12). The suit also sought a declaratory judgment declaring Tipp as the lawful owner of the foreclosed property. (Doc. 14-12). Defendants responded with a motion for summary judgment (Doc. 14-13), which was granted by the court after full briefing by both sides (Doc. 14-14).

3

In 2018, Tipp filed a suit in the Circuit Court of Mobile County asserting the following claims against JPMC: slander of title, trespass, trespass to chattels, conversion of real property, and a claim for "unlawful conveyance of title and unlawful settlement of claims."[3] (Doc. 14-21, PageID.587–88). In response, JPMC filed a motion to dismiss (Doc. 14-22), which was granted by the court (Doc. 14-23). Tipp filed a motion to vacate this order (Doc. 14-24), which was denied (Doc. 14-25), and appealed this decision to the Supreme Court of Alabama. The Supreme Court of Alabama affirmed the lower court's judgment in JPMC's favor without opinion. (Doc. 14-2). Tipp then filed a writ of certiorari to the United States Supreme Court, which was denied. *Tipp v. JPMC Specialty Mortgage, LLC*, 140 S. Ct. 1124 (Mem) (2020); (Doc. 12-28).

While these appeals were pending, Tipp sought to challenge earlier court decisions related to the foreclosure sale. While the 2018 case was pending before the Supreme Court of Alabama, Tipp unsuccessfully moved to set aside the settlement agreement between Ms. Sims and JPMC in their 2013 case. (Doc. 14-30). While the writ of certiorari in the 2018 case was pending before the United States Supreme Court, Tipp again unsuccessfully moved to set aside the settlement in the 2013 case. (Doc. 14-32). After this failure, Tipp unsuccessfully challenged the court's judgment in the 2011 case. (Doc. 14-34). After the writ of certiorari in the 2018 case was denied

---

[3] In 2013, Ms. Sims challenged JPMC's foreclosure in Mobile County Circuit Court. That case was dismissed with prejudice in 2018 after the parties reached a settlement (Docs. 14-19, 14-20). After this settlement, Tipp amended her complaint in the 2018 case against JPMC to include the last claim.

4

by the United States Supreme Court, Tipp unsuccessfully attempted to vacate the adverse judgments in the 2011 and 2018 cases. (Docs. 14-35). After these denials, Tipp filed appeals in both the 2011 and 2018 cases, which were rejected by the Supreme Court of Alabama after issuing show cause orders in June 2020. (Docs. 14-38, 14-37). Shortly after the Supreme Court of Alabama rejected her appeal of the 2011 case (Doc. 14-39), Tipp filed the present action in federal court.

## II. Discussion

Defendants raise three arguments in support of their motion for summary judgment: (1) the Court is deprived of jurisdiction over Tipp's claims under the *Rooker-Feldman* doctrine; (2) Tipp's claims are barred under the doctrine of *res judicata*; (3) and Tipp's claims are barred by the applicable statutes of limitations.

Defendants argue that the *Rooker-Feldman* presents a jurisdictional bar to Tipp's claims. [4] Defendants cite to Federal Rule of Civil Procedure 56 as a basis for bringing the motion. (Doc. 12, PageID.389). However, no portion of Rule 56 mentions jurisdictional challenges. *See* Fed. R. Civ. P. 56. Further, '[s]eeking summary judgment on a jurisdictional issue . . . is the equivalent of asking a court to hold that because it has no jurisdiction the plaintiff has lost on the merits. This is a nonsequitur." *Winslow v. Walters*, 815 F.2d 1114, 1116 (7th Cir. 1987). Regardless, addressing issues of jurisdiction must come before the Court can consider the merits

---

[4] Defendants first suggested that *Rooker-Feldman* may apply in their answer to Tipp's complaint. (*See* Doc. 7, PageID.108).

5

of the case. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998) ("The requirement that jurisdiction be established as a threshold matter 'spring[s] from the nature and limits of the judicial power of the United States' and is 'inflexible and without exception.'" (quoting *Mansfield, C. & L.M.R. Co. v. Swan*, 111 U.S. 379, 382 (1884)). Notwithstanding Defendant's characterization of the motion, the Court will construe Defendants' jurisdictional challenge as being properly brought under Rule 12(b)(1) [5] rather than Rule 56. *See Winslow*, 815 F.2d at 1116 (treating a jurisdictional challenge brought in a motion for summary judgment "as if it had been properly pleaded" under Rule 12(b)(1)).

"A defendant may attack subject matter jurisdiction under Rule 12(b)(1) in two ways—a facial attack or a factual attack." *Figueroa v. Merscorp, Inc.*, 766 F. Supp. 2d 1305, 1315 (S.D. Fla. 2011), *aff'd*, 477 F. App'x 558 (11th Cir. 2012). These different approaches are summarized as follows:

> A facial attack asserts that a plaintiff has failed to allege a basis for subject matter jurisdiction in the complaint. *See Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980). In a facial attack, the plaintiff's allegations are taken as true for the purposes of the motion, *see id.*, and the plaintiff is afforded safeguards similar to those provided in challenging a Rule 12(b)(6) motion. *See Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990).
> On the other hand, a factual attack "challenges the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings such as testimony and affidavits, are considered." *Menchaca*, 613 F.2d at 511. In a factual attack, courts are free to weigh the evidence to satisfy themselves they have the power to

---

[5] Unlike other Rule 12(b) defenses, a Rule 12(b)(1) challenge is not waived when omitted from a pre-answer motion or answer. *See* Fed. R. Civ. P. 12(h)(1) (omitting a Rule 12(b)(1) challenge from a list of waivable pre-answer defenses); Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

hear the case. *See Lawrence*, 919 F.2d at 1529. No presumption of truth attaches to the plaintiff's allegations, and the existence of disputed material facts does not prevent the trial court from evaluating for itself the merits of the jurisdictional claim. *See id.* Moreover, "[i]n the face of a factual challenge to subject matter jurisdiction, the burden is on the plaintiff to prove that jurisdiction exists." *OSI, Inc. v. United States*, 285 F.3d 947, 951 (11th Cir. 2002) (citations omitted).

*Figueroa*, 766 F. Supp. 2d at 1315. Defendants' motion presents a factual attack on the subject matter jurisdiction of the Court under the *Rooker-Feldman* doctrine, so the Court will weigh the extrinsic evidence offered to determine if Tipp has properly established jurisdiction.

A. *Rooker-Feldman* Doctrine

Under the *Rooker-Feldman* doctrine, "federal district courts cannot review state court final judgments because that task is reserved for state appellate courts or, as a last resort, the United States Supreme Court." *Casale v. Tillman*, 558 F.3d 1258, 1260 (11th Cir. 2009) (citing *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 482 (1983)). The *Casale* court further explained the doctrine:

> The doctrine applies both to federal claims raised in the state court and to those "inextricably intertwined" with the state court's judgment. [*Feldman*, 460 U.S. at 482 n. 16.] It does not apply, however, where a party did not have a "reasonable opportunity to raise his federal claim in state proceedings." [*Powell v. Powell*, 80 F.3d 464, 467 (11th Cir. 1996)] (internal quotation marks omitted). A claim is inextricably intertwined if it would "effectively nullify" the state court judgment, *id.* (internal quotation marks omitted), or it "succeeds only to the extent that the state court wrongly decided the issues." *Goodman ex rel. Goodman v. Sipos*, 259 F.3d 1327, 1332 (11th Cir.2001).
> 
> While the Supreme Court's recent Rooker–Feldman decisions have noted the "narrowness" of the rule, *see* [*Lance v. Dennis*, 546 U.S. 459, 464 (2006)], they have also confirmed that it continues to apply with full force to "cases brought by state-court losers complaining of injuries

7

caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." [*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)].

*Casale*, 558 F.3d at 1260–61; *see also Ware v. Polk Cty. Bd. of Cty. Comm'rs*, 394 F. App'x 606, 608 (11th Cir. 2010) (applying *Rooker-Feldman* where the federal claims directly challenged or were inextricably intertwined with the state court judgment because "they focus[ed] on the legality of the lien that was litigated in state court.").

The *Rooker-Feldman* doctrine can bar federal lawsuits related to state foreclosure proceedings. In *Lucy v. Walter Mortgage Co.*, *Rooker-Feldman* deprived the court of subject matter jurisdiction over all but one of the plaintiff's causes of action where the nexus of the claims stemmed from a foreclosure sale previously litigated in state court. No. 09-cv-167-KD-M, 2009 WL 3336685, at *1 (S.D. Ala. Oct. 14, 2009). Similarly, other courts have found that *Rooker-Feldman* deprives them of subject matter jurisdiction where the federal claims are identical to or "inextricably intertwined" with previously litigated state foreclosure proceedings. *See Figueroa*, 766 F. Supp. 2d at 1320 (collecting cases). The *Rooker-Feldman* doctrine applies to both state law claims and federal law claims. *See, e.g.*, *Powell v. Powell*, 80 F.3d 464, 467 (11th Cir. 1996) ("Neither this Court nor the Supreme Court has limited the scope of the *Rooker–Feldman* doctrine to state court judgments based solely on state law.")

In this case, the Court finds that the *Rooker-Feldman* doctrine deprives the Court of subject matter jurisdiction over all six of Tipp's federal claims because they are either identical to or inextricably intertwined with state proceedings that became final prior to her filing the present suit. Tipp's first claim that Defendants "denied

8

[her] due process of the law" by obtaining multiple state court decisions adverse to Tipp's claims of ownership (Doc. 1, PageID.34) falls under the *Rooker-Feldman* doctrine as an impermissible appeal of a state court decision through a federal district court. The rulings in the 2009, 2011, and 2018 cases became final[6] before Tipp filed the present suit on June 12, 2020 (Doc. 1, PageID.40), bringing the *Rooker-Feldman* doctrine into play. Tipp's grievances with various alleged procedural defects in the state court decisions is tantamount "to complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *See Exxon Mobil Corp.*, 544 U.S. at 284. The "proper response" for Tipp "was the same one open to all litigants who are unhappy with the judgment of a trial court: direct appeal." *See Casale*, 558 F.3d at 1261. Thus, this Court does not have jurisdiction over Tipp's first claim.

Tipp's second and third claims allege that Defendants violated federal law by committing fraud during the foreclosure proceedings. In her second claim, Tipp alleges that Defendants violated the National Banking Act by asserting that its business entities were authorized to conduct business in Alabama in executing its ejectment action in state court. (Doc. 1, PageID.35). In her third claim, Tipp alleges

---

[6] The dismissal of the 2009 case became final when the deadline for Tipp to appeal the ruling expired without action. The dismissal of the 2011 case became final in 2013 when Tipp failed to timely appeal the Supreme Court of Alabama's summary affirmance of the trial court's dismissal to the United States Supreme Court. (Doc. 14-17, PageID.532). The dismissal of the 2018 case became final on February 24, 2020 when the United States Supreme Court denied Tipp's petition for a writ of certiorari seeking review of the Supreme Court of Alabama's summary affirmance of the 2018 case's dismissal. *See* (Doc. 12-28); *Tipp v. JPMC Specialty Mortgage, LLC*, 140 S. Ct. 1124 (Mem) (2020).

9

that Defendants violated the federal RICO statute[7] by "falsely assert[ing] ownership of the mortgage at issue through the state courts" and "engaged in a pattern of [racketeering] . . . when Defendant's conspired to settle claims to Plaintiff's property in a 'secret agreement' with [Ms. Sims]." (Doc. 1, PageID.36–37). The second claim (and, in part, the third claim) rely on Tipp's allegations of Defendants' inability to properly bring the 2009 foreclosure action in state court, an argument refuted by the state courts in the 2009, 2011, and 2018 cases.[8] (*See* Doc. 14-5, PageID.441; Doc. 14-12, PageID.497; Doc. 14-21, PageID.559–60). Given the state courts' treatment of this issue, Tipp was not deprived of a reasonable opportunity to raise her National Bank Act claim during the state proceedings. *See Powell*, 80 F.3d at 467 (holding that litigant had reasonable opportunity to raise federal claim during state proceedings). The National Bank Act claim is inextricably intertwined with Tipp's earlier state claims, therefore any review of the merits of the argument by the Court is barred by *Rooker-Feldman*. *See Casale*, 558 F.3d at 1260.

The core of Tipp's RICO claim—alleged fraud and collusion in the settlement between Defendants and Ms. Sims—was addressed in the 2018 state court case. (*See* Doc. 14-21, PageID.587–89). Tipp also alleges that Defendants committed fraud in executing the 2009 foreclosure proceedings (Doc. 1, PageID.36–37), another matter addressed by state courts in earlier proceedings (*see* Doc. 14-12, PageID.500–01).

---

[7] Codified in 18 U.S.C. 3 1962(c).

[8] Further, JPMC was not prohibited from bringing an ejectment action. *See infra*, note 9.

*Rooker-Feldman* deprives the Court of jurisdiction over Tipp's second and third claims as they are "inextricably intertwined" with finalized state court proceedings—Tipp's requested relief would effectively nullify the earlier state rulings. *See Casale*, 558 F.3d at 1260; *Figueroa*, 766 F. Supp. 2d at 1323 (holding that *Rooker-Feldman* barred a RICO claim that could "only succeed if the Court implicitly or explicitly determines the Florida state court wrongly decided the foreclosure issue"); *see also Tal v. Hogan*, 453 F.3d 1244, 1256 (10th Cir. 2006) (applying *Rooker-Feldman* to a civil RICO claim inextricably intertwined with state condemnation proceedings).

Tipp's remaining claims likewise run afoul of *Rooker-Feldman*. In her fourth claim, Tipp alleges that Defendants committed trespass in executing the 2009 foreclosure action by taking "unlawful possession of [her] property." (Doc. 1, PageID.38–39). This claim is identical to Tipp's claim raised in the 2009, 2011, and 2018 cases. (*See* Doc. 14-5, PageID.444–45; Doc. 14-12, PageID.498–99; Doc. 14-21, PageID.581–83). Tipp's fifth claim alleges that Defendants "made known false statements of fact contained in the foreclosure deed and ejectment action." (Doc. 1, PageID.38). This claim is identical to Tipp's claim raised in the 2011 case. (*See* Doc. 14-12, PageID.500–01). In Tipp's sixth claim, she alleges that JPMC is an "unqualified foreign corporation" prohibited from using Alabama courts to execute foreclosure actions, and the foreclosure and ejectment proceedings were invalid.[9]

---

[9] For this claim, Tipp cites a section of Alabama code that was repealed in 2014, *see* Ala. Code § 10A-2-15.02. Tipp claims that at the time Defendants brought the ejectment action in Alabama state court in 2009, the court did not have jurisdiction to entertain the suit because JPMC was an unregistered foreign corporation. (Doc. 1, PageID.39). In the version of statute effective in 2009, unregistered foreign

11

(Doc. 1, PageID.39–40). Again, this claim is identical to Tipp's claim raised in the 2009, 2011, and 2018 cases. (*See* Doc. 14-5, PageID.441; Doc. 14-12, PageID.497; Doc. 14-21, PageID.559–60). Accordingly, this Court has no jurisdiction to entertain these claims under *Rooker-Feldman* as district court review would undermine the legitimacy of the earlier, finalized state proceedings. *See Figueroa,* 766 F. Supp. 2d at 1324 (S.D. Fla. 2011) ("Because the federal claims can only succeed if the state court wrongly granted the foreclosure, the federal and state claims are inextricably intertwined."), *aff'd*, 477 F. App'x 558 (11th Cir. 2012); *Lucy,* 2009 WL 3336685 at *2 (applying *Rooker-Feldman* to federal claims that "predate and stem" from a state foreclosure judgment).

Tipp raises several arguments against the application of *Rooker-Feldman* to her present suit. Primarily, Tipp argues that *Rooker-Feldman* does not apply because her claims stem from Defendants actions, not the state court decisions those actions caused. (Doc. 25, PageID.1271–72). However, Tipp's claims all share a common "essence": the foreclosure sale that Defendants executed prior to Ms. Sims issuing Tipp a quitclaim deed. *Cf. Target Media Partners v. Specialty Mktg. Corp.,* 881 F.3d 1279, 1287 (11th Cir. 2018) (declining to apply *Rooker-Feldman* to a defamation claim

---

corporations were barred from "maintaining a proceeding in [Alabama] . . . ." Ala. Code § 10A-2-15.02 (2009). However, as the subsidiary of a national bank performing real estate transactions, federal law exempted JPMC from Alabama's registration requirement for maintaining an action in state court. *See Watters v. Wachovia Bank, N.A.*, 550 U.S. 1, 7 (2007) (holding that a national bank's mortgage lending activities, "whether conducted by the bank itself or through the bank's operating subsidiary," is governed by federal law and regulations rather than "the licensing, reporting, and visitorial regimes of the several States in which the subsidiary operates.").

related to earlier state proceedings where the "court could decide on the merits of the [new] defamation claim without rendering a judgment on the merits of the [previously-litigated] breach-of-contract claim"). While Tipp's claims are not all strictly related to a state court judgment, the foreclosure sale is inextricably intertwined with the litany of state court decisions—in 2009, 2011, and 2018—adverse to Tipp's present claims. If the Court were to rule in Tipp's favor and find that some aspect of the foreclosure sale, subsequent ejectment action, or eventual settlement between Defendants and Ms. Sims is legally deficient, then the prior state court judgments rejecting these arguments would be "effectively nullified." *See Figueroa*, 766 F. Supp. 2d at 1323 (S.D. Fla. 2011) (applying *Rooker-Feldman* to claims that "can only succeed if the Court implicitly or explicitly" decides that the "state court wrongly decided the foreclosure issue."), *aff'd*, 477 F. App'x 558 (11th Cir. 2012). Such a result is barred by *Rooker-Feldman*.

Tipp also argues that *Rooker-Feldman* does not apply because Defendants argued in prior state cases that she lacked standing to challenge their foreclosure against Ms. Sims. (Doc. 25, PageID.1268). Dismissals for lack of jurisdiction do not operate as adjudications on the merits, and do not count as prior state court decisions triggering *Rooker-Feldman. See Target Media Partners,* 881 F.3d at 1287 (noting that claims "actually adjudicated by a state court plainly would be barred by Rooker–Feldman."). However, what Defendants argued in prior cases is not relevant to a *Rooker-Feldman* analysis—only the state court rulings themselves determine whether a decision is on the merits. Here, the 2009 state court dismissal of Tipp's

complaint cites only "Rule 12(b)" of the Alabama Rule of Civil Procedure (Doc.14-9), which governs dismissals both for lack of jurisdiction and for failure to state a claim upon which relief may be granted. *See* Ala. R. Civ. P. 12. Despite the lack of clarity in the 2009 ruling, the rulings issued by the state courts in the 2011 and 2018 cases were expressly on the merits—the 2011 case ended with the Defendants being awarded summary judgment (Doc. 14-14) and the 2018 case ended with Tipp's case being dismissed with prejudice upon granting Defendants' motion to dismiss (Doc. 14-21). [10] In the 2011 and 2018 cases, Tipp presented claims identical to or inextricably intertwined with her present claims, triggering the *Rooker-Feldman* doctrine. Accordingly, the Court does not have subject matter jurisdiction over any of Tipp's claims.[11]

B. Motions to Strike

Tipp has filed three motions to strike, seeking to strike (1) Defendants' answer (Doc. 11); (2) Defendants' evidentiary support for their summary judgment motion (Doc. 24); and (3) Defendants' motion for summary judgment (Doc. 25). Based on the discussion above, Tipp's motions are denied as moot.

---

[10] Conversely, a dismissal for lack of subject-matter jurisdiction results in a dismissal *without prejudice* to the plaintiff's right to refile the action. *Ex parte Capstone Dev. Corp.*, 779 So. 2d 1216, 1218 (Ala. 2000).

[11] Defendant also raises a *res judicata* argument as a bar against Tipp's previously litigated claims in its motion for summary judgment (Doc. 13, PageID.405). While Defendant would likely be entitled to summary judgment on *res judicata* grounds, the Court need not rule on the merits of the motion given the lack of jurisdiction under *Rooker-Feldman*.

C. Motion for Rule 11 Sanctions

Defendants have also filed a motion for Rule 11 sanctions based on Tipp's decade-long history of "repeated vexatious filings." (Doc. 15, PageID.1072). Defendants seek an injunction barring Tipp "from filing any further actions against Defendants without prior leave of this Court." (Doc. 15, PageID.1071). "Rule 11 requires district courts to impose 'appropriate sanctions' after notice and a reasonable opportunity to respond, where an attorney or party submits a pleading to the court that: (1) is not well-grounded in fact, i.e., has no reasonable factual basis; (2) is not legally tenable; or (3) is submitted in bad faith for an improper purpose." *Riccard v. Prudential Ins. Co.*, 307 F.3d 1277, 1294 (11th Cir. 2002). A claim is not legally tenable when (1) the party's claims are objectively frivolous; and (2) the person who signed the pleadings should have been aware that they were frivolous. *See Baker v. Alderman*, 158 F.3d 516, 524 (11th Cir. 1998). Courts have wide discretion to impose Rule 11 sanctions, including imposing restrictions on a party's ability to file suits in the future. "The court's power to protect its jurisdiction includes the power to enjoin a dissatisfied party bent on re-litigating claims that were (or could have been) previously litigated before the court from filing in both judicial and non-judicial forums, as long as the injunction does not completely foreclose a litigant from any access to the courts . . . ." *Riccard*, 307 F.3d at 1295 n.15.

Here, Defendants point to Tipp's five lawsuits, activity in related lawsuits in which she was not a party, attempts to re-open the three state cases, and lengthy filings as evidence of a need to bar her from further filings without leave of court.

15

Defendants claim that Tipp has said that she plans to "fight this until the day [she] die[s] or Jesus comes." (Doc. 15, PageID.1072). The Court previously stayed briefing on Defendants' motion for sanctions while the motion for summary judgment was resolved. (Doc. 20, PageID.1195).

Due process requires that Tipp be afforded notice and an opportunity to be heard in response to Defendants' motion for Rule 11 sanctions. *See In re Hartford Textile Corp.*, 613 F.2d 388, 390 (2d Cir. 1979) (per curiam) (reversing and remanding trial court's *sua sponte* imposition of an injunction limiting a party's ability to file future lawsuits without giving the sanctioned party "notice and an opportunity to be heard"). Accordingly, a briefing schedule and telephonic hearing will be set by a separate order.

### III. Conclusion

Therefore, in accordance with the foregoing analysis, and pursuant to 28 U.S.C. § 636(b)(1)(B)–(C), Federal Rule of Civil Procedure 72(b)(1), and S.D. Ala. GenLR 72(a)(2)(S), the undersigned **RECOMMENDS** that Defendants' motion (Doc. 12) be **GRANTED**, and that:

- Tipp's claims be **DISMISSED without prejudice** for lack of subject matter jurisdiction; and

- The following motions be declared **MOOT**: Docs. 11, 24, and 25.

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. Ala. GenLR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this 28th day of January 2021.

*/s/ Katherine P. Nelson*
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**